PAULA M. YOST (State Bar No. 156843)
paula.yost@dentons.com
SANDRA R. MCCANDLESS (State Bar No. 57740)
sandra.mccandless@dentons.com
IAN R. BARKER    (State Bar No. 240223)
ian.barker@dentons.com
DENTONS US LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendant
SHINGLE SPRINGS BAND OF
MIWOK INDIANS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH A. BODI,<br><br>          Plaintiff,<br><br>     vs.<br><br>SHINGLE SPRINGS BAND OF MIWOK INDIANS; and DOES 1 through 15, inclusive,<br><br>          Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL** |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF

RECORD:

PLEASE TAKE NOTICE that defendant Shingle Springs Band of Miwok Indians hereby

removes to this Court the state court action described herein on the grounds set forth below.

### THE SUPERIOR COURT ACTION

1.    On April 22, 2013, plaintiff Beth A. Bodi ("Plaintiff") commenced in the Superior

Court for the County of El Dorado, California ("Superior Court") an action entitled *Beth A. Bodi v.*

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Shingle Springs Band of Miwok Indians and Does 1 through 15, inclusive*, Case No. PC-20130208 (the "Superior Court Action").

2.      In the Superior Court Action, Plaintiff names as a defendant her former employer, the Shingle Springs Band of Miwok Indians ("Tribe"), a federally recognized sovereign Indian tribe, beneficial owner of the Shingle Springs Rancheria, located in El Dorado County, California. The Tribe is the owner and operator of a tribal health clinic known as the Shingle Springs Tribal Health Program for which Plaintiff worked and that is located on the Shingle Springs Rancheria. (Complaint, at ¶¶ 2, 4, 5.) Plaintiff is a member of the Tribal government she has sued in this action. (*Id.*, at ¶ 9.)

3.      Plaintiff alleges that, upon notifying the Tribe of her health diagnosis and election to exercise her right to leave under the Family and Medical Leave Act (29 U.S.C. § 2601, *et seq.*) ("FMLA"), the Tribe advised Plaintiff that she could take as much leave as necessary, and need not utilize leave under the FMLA. (*Id.*, at ¶ 16.) Plaintiff contends that, in reliance on these statements, she did not take FMLA leave, and instead continued working while receiving weekly health treatments. (*Id.*)

4.      Plaintiff further alleges that, in advising her against taking FMLA leave and evaluating her job performance during a period when she was experiencing serious health issues and separately suffered a serious ankle injury, the Tribe engaged in conduct to "set plaintiff up," using an unfair performance evaluation and the expiration of her disability leave as a pretext for terminating her as Executive Director of the  Shingle Springs Tribal Health Program. (*Id.*, at ¶¶ 25, 27, 33, 42, 43, 47.)

5.      Plaintiff further alleges the Tribe terminated her employment in retaliation for her objections regarding certain actions undertaken by the Shingle Springs Tribal Health Program (*id.* at ¶¶ 44-47), and further  alleges that after being re-hired by the Tribe to work as an Executive Assistant for the Tribal Chairman, she was terminated from her position after she informed the Tribe of her willingness to seek redress of her grievances in the Superior Court. (*Id.*, at ¶ 49.)

6.      Plaintiff asserts causes of action against the Tribe for violation of the FMLA, along with various state law theories that rest on the same factual allegations, including Medical

1  Condition Discrimination, Failure to Prevent Discrimination, California Family Rights Act

2  Interference, Wrongful Termination in Violation of Public Policy, and Retaliation. Plaintiff seeks

3  compensatory damages, medical and emotional distress damages, exemplary and punitive

4  damages, and attorney fees and costs. (*Id.*, at 18:12-22.)

5  **SERVICE OF PLEADINGS**

6  7.    By electronic email dated April 25, 2013 from the Tribe's counsel to Plaintiff's

7  counsel, the Tribe agreed to accept service of the Summons and Complaint, with such service to

8  be effected on the Tribe's legal counsel on April 29, 2013. Pursuant to that agreement, Plaintiff

9  effected service of the Summons and Complaint by hand delivery to the Tribe's legal counsel on

10  Monday, April 29, 2013. *See* Declaration of Sandra McCandless in Support of Removal of State

11  Court Action to Federal District Court ("McCandless Decl."), ¶ 2, Exh A.

12  8.    Attached hereto as Exhibit A are true and correct copies of the Summons,

13  Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case Management

14  Conference, and Notice to Change Hearing Date, which the Tribe believes constitute all pleadings

15  on file in the Superior Court Action.

16  **NOTICE TO PLAINTIFF AND SUPERIOR COURT**

17  9.    Pursuant to 28 U.S.C. § 1446(d), written notice of this filing will be given to

18  Plaintiff, and a copy of this Notice of Removal will be filed with the Clerk of Court for the

19  Superior Court of California, El Dorado County.

20  **TIMELINESS OF REMOVAL**

21  10.   The Tribe was personally served the Summons and Complaint in the Superior

22  Court Action on April 29, 2013. McCandless Decl., ¶ 2, Exh. A.

23  11.   Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within

24  thirty (30) days of the Tribe's notice and receipt of Plaintiff's Complaint.

25  **VENUE IS PROPER**

26  12.   The Superior Court Action was filed in the Superior Court of the State of

27  California, County of El Dorado and venue is therefore proper in this Court pursuant to 28 U.S.C.

28  §§ 84(b), 1391(b)(1), 1441(a) and 1446(a).

DENTONS US LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**JURISDICTION**

13.     The Superior Court Action is removable to this Court, and this Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1331 because, as set forth below, Plaintiff's complaint unambiguously raises issues that arise under federal law, to wit, the FMLA.

14.     The FMLA makes it unlawful for any employer to (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any rights provided" by the FMLA, and (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a); *see also* 29 C.F.R. § 825.220(a)(2) (prohibiting employers from "discharging or in any other way discriminating against any person...for opposing or complaining about any unlawful practice under the [FMLA]").

15.     The gravamen of Plaintiff's Complaint is that the Tribe, in its capacity as Plaintiff's employer, allegedly discriminated against Plaintiff on the basis of her medical condition, interfered with Plaintiff's entitlement to medical leave, and retaliated against Plaintiff for exercising her right to take medical leave, in violation of the FMLA and its implementing regulations.  (Complaint, ¶¶ 68, 81.)  Specifically, Plaintiff alleges the Tribe discouraged her from using FMLA leave to which she claims she was entitled, and further alleges that "[t]his interference [was] in violation of 29 U.S.C. § 2615(a) and 29 CFR section 825.220(b)..." (Complaint, at ¶ 69.)

16.     Plaintiff alleges that, as a result of such discrimination and interference, Plaintiff was unable to perform her duties as an employee to her full potential, and that Plaintiff sustained economic loss and emotional distress.  (*Id.*, ¶¶ 70-72.)

17.     Plaintiff further contends the Tribe's actions constitute a violation of public policy, as set forth in the FMLA as well as "state and federal whistleblower protection statutes."  (*Id.*, ¶ 76.)

18.     In addition, while this Court possesses supplemental jurisdiction over each of Plaintiff's state law claims (as they are related to the federal claims, and indeed, rest on the same operative facts) (25 U.S.C. § 1367), each of Plaintiff's state law claims separately presents a substantial question of federal law, as Plaintiff seeks to enforce state laws vis-à-vis a Tribal

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

government in connection with its operation of a tribal health clinic on federal trust land.  Under

"Public Law 280" (18 U.S.C. § 1162, 28 U.S.C. § 1360), state regulatory laws (as compared to

prohibitory laws) do not apply to federally-recognized Tribal governments in connection with

their governmental and business operations on tribal trust land.  Plaintiff's Complaint, therefore,

raises the question under federal law as to whether such state law claims apply.

19.     Accordingly, because Plaintiff's Complaint raises claims that arise under federal

law, and present substantial questions of federal law, this case is properly removable to this Court.

WHEREFORE, defendant Shingle Springs Band of Miwok Indians hereby gives notice

that all further proceedings in this matter shall take place in the United States District Court for

the Eastern District of California, unless and until held otherwise by that Court.

Dated: May 28, 2013

DENTONS US LLP
Paula M. Yost
Sandra R. McCandless
Ian Barker

By _____ /s/ Paula M. Yost _____
PAULA M. YOST

Attorneys for Defendant
SHINGLE SPRINGS BAND OF
MIWOK INDIANS

27409566

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| PACIFIC AMERICAN LAW GROUP, PC<br>David Nied (136413); Wendy L. Hillger (175682); Lisa Battista (281448)<br>582 Market Street, Suite 2009<br>San Francisco, CA 94104<br>TELEPHONE NO.: (415) 795-3579   FAX NO.: (415) 796-0727<br>ATTORNEY FOR *(Name):* Beth A. Bodi | EL DORADO CO. SUPERIOR CT.<br><br>**FILED**  APR 2 2 2013<br><br>BY _____<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Cameron Park, CA 95682
BRANCH NAME: Cameron Park Branch

CASE NAME:
BODI v. SHINGLE SPRINGS BAND OF MIWOK INDIANS et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | PC  20130208<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*  5
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4-21-2013
Wendy L. Hillger
_____
(TYPE OR PRINT NAME)                                    ►  _____
                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

Assigned to
Judge Nelson K. Brooks
for all purposes

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SHINGLE SPRINGS BAND OF MIWOK INDIANS; and DOES 1
through 15, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BETH A. BODI

EL DORADO CO. SUPERIOR CT.

FILED  APR 2 2 2013

BY _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Cameron Park Branch<br><br>3321 Cameron Park Drive<br>Cameron Park, CA 95682 | CASE NUMBER: *(Número del Caso):* **PC 2 0 1 3 0 2 0 8** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David Nied; Wendy L. Hilger, 582 Market St., Ste 2009, San Francisco, CA 94104, (415) 795-3579

| DATE: *(Fecha)* APR 2 2 2013 | Clerk, by *(Secretario)* _____ , Deputy *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Assigned to
Judge Nelson E. Brooks
For all purposes

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

PACIFIC AMERICAN LAW GROUP, PC
David Nied (SBN 136413)
Wendy L. Hillger (SBN 178682)
Lisa Battista (SBN 281448)
582 Market Street, Suite 2009
San Francisco, CA  94104
Telephone: (415) 795-3579
david@palgsf.com
whillger@palgsf.com
lbattista@palgsf.com

Attorneys for Plaintiff Beth A. Bodi

EL DORADO CO. SUPERIOR CT.

**FILED** APR 2 2 2013

BY _____
          Deputy

**SUPERIOR COURT FOR THE COUNTY OF EL DORADO**

**STATE OF CALIFORNIA - UNLIMITED JURISDICTION**

| | |
|---|---|
| BETH A. BODI,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SHINGLE SPRINGS BAND OF MIWOK INDIANS; and DOES 1 through 15, inclusive,<br><br>　　Defendants. | Case No. **PC 20130208**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>　1.　**MEDICAL CONDITION**<br>　　　**DISCRIMINATION**<br><br>　2.　**FAILURE TO PREVENT**<br>　　　**DISCRIMINATION**<br><br>　3.　**FMLA AND CFRA INTERFERENCE**<br><br>　4.　**WRONGFUL TERMINATION IN**<br>　　　**VIOLATION OF PUBLIC POLICY**<br><br>　5.　**RETALIATION**<br><br>JURY TRIAL DEMANDED |

Assigned to
Judge Nelson K. Brooks
For all purposes

///

1

Case No.                                                                                    COMPLAINT FOR DAMAGES

Plaintiff BETH A. BODI alleges as follows:

## I. PARTIES

1.       Plaintiff BETH A. BODI is an individual who resides in El Dorado County, California. At all times relevant to this complaint, she has been an employee of Defendants at the Shingle Springs Tribal Health Program, located in Shingle Springs, El Dorado County, California.

2.       Defendant SHINGLE SPRINGS BAND OF MIWOK INDIANS is a federally-registered and recognized Indian tribal government.  There are about 500 tribal members, and over 100 tribal members live on the Shingle Springs Rancheria, located on the Verona Tract in Shingle Springs, El Dorado County, California.

3.       Defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1-15 maintain businesses within El Dorado County, have agents, and are otherwise within this Court's jurisdiction for purposes of service of process.  On information and belief, Defendants' Tribal Council and Health Board of the Shingle Springs Tribal Health Program are officers, directors or managing agents of Defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1-15.

4.       Defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1-15 own, operate and do business as the Shingle Springs Tribal Health Program, among other ventures. The Shingle Springs Tribal Health Program offers medical, dental, behavioral and outreach patient services to Native Americans and the general public at its clinic.

5.       Though Defendant SHINGLE SPRINGS BAND OF MIWOK INDIANS is a Sovereign Indian nation, it has explicitly waived its sovereign immunity and agreed to follow State and Federal laws prohibiting employment discrimination practices.  By reason of accepting State and Federal funding, grants, Medi-Care/Medi-Cal patient reimbursement payments, in addition to obtaining California licenses for use at the Shingle Springs Tribal Health Program, Defendants have explicitly waived their immunity and are required to comply with State and Federal laws.  (See e.g., California Government Code section 11135).  The unlawful acts complained of in this Complaint took place in or around the Shingle Springs Tribal Health Program located in Shingle Springs, California.  The unlawful acts alleged herein have had a direct effect on Plaintiff.

2

6.     Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued as DOES 1 through 15, inclusive, and therefore sues these Defendants by such fictitious names pursuant to Code of Civil Procedure section 474.  Plaintiff will seek leave to amend this complaint to allege the true names and capacities of these Defendants when ascertained, together with additional charging allegations as necessary.  Plaintiff is informed and believes that each of the fictitiously named Defendants is legally responsible in some manner for the occurrences alleged and for Plaintiff's resulting damages.

7.     Plaintiff is informed and believes that at all times material to this complaint each Defendant was and is the agent, servant, and/or employee of each of the remaining Defendants, and that all things alleged to have been done by each Defendant were done in the course and scope of the agency and employment, and were authorized and ratified by each principal, and/or the actions were done by a managing agent of Defendants.

## II.  JURISDICTION AND VENUE

8.     Jurisdiction and venue as to Defendants is proper because California employment law is at issue and all acts and activities of the parties relevant to each cause of action took place in El Dorado County, California.

## III.  FACTUAL ALLEGATIONS

### Plaintiff's employment with Defendants.

9.     Plaintiff BETH A. BODI ("plaintiff") is a female member of the Shingle Springs Band of Miwok Indians.  She also worked at the Shingle Springs Tribal Health Program from February 1997 through her August 3, 2012 wrongful termination.  She was hired on February 27, 1997 as an independent contractor by Defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1-15 to assist defendants in preparing the health clinic for a State audit.   In June 1997 Plaintiff was hired as a full-time employee, with the title Administrative Assistant.  In 1999, plaintiff was promoted to Interim Executive Director for the Shingle Springs Tribal Health Program.   In 2001, plaintiff received a Bachelor of Science Degree in Business Administration.  In November 2001, plaintiff was promoted to Executive Director at the Shingle Springs Tribal Health Program.

3

10.     Despite working since 1997 for defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS, and DOES 1-15, plaintiff was given only two Employee Performance reviews: one in December 2000, and another in 2012.  In the 2000 performance review, undertaken when plaintiff was the Interim Executive Director, plaintiff earned all "Superior" reviews.  Plaintiff did not receive any performance reviews over the next twelve years, during which time she served as Executive Director.  Plaintiff did receive an "Employee of the Year" award in 2002.  Plaintiff also received a glowing November 10, 2003 "Peer Review" which noted (in part):

> Beth Bodi is doing a great job as the executive director of the health program.  She is been [sic] dedicated, hardworking, diligent and responsive to the needs of the health program.  Beth has leadership and the ability to keep the staff together like strong glue.  She understands each department and knows how each position is valuable to the program. She helps out in every administrative position of the clinic.  That is a rare quality of service in any workplace.

> Beth has the qualities to direct and manage the clinic in reaching the Health Program goals.

11.     As Executive Director of the Shingle Springs Tribal Health Program, plaintiff oversaw all of the health clinic department directors (Behavioral Health, Medical, Dental, Outreach, Transportation and Quality Assurance).  Plaintiff reported on a monthly basis to the seven-member Board of Directors for the Shingle Springs Tribal Health Program.

12.     In September 2006, plaintiff was terminated from her position as the Executive Director.  After a finding that her termination had been wrongful, she was later re-hired.  Plaintiff was re-hired by the Tribal Chairperson, Nicholas Fonseca, as a Billings Manager.  Within a year, plaintiff was promoted back to Executive Director.  However, plaintiff was the lowest paid Executive Director in California's Indian Country.

13.     Starting in approximately 1999, under Ms. Bodi's direction and leadership, a new health clinic was conceived and planned.  This new four-story health clinic for the Shingle Springs Tribal Health Program, which opened on October 3, 2011 is owned and operated by defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1-15.  Under plaintiff's management, defendants were able to qualify for a USDA loan to build this new facility that is now

4

Case No.                                                          COMPLAINT FOR DAMAGES

1    located on the Shingle Springs Rancheria.  The accomplishment of building a new tribal facility and

2    having it located on the Rancheria property were huge milestones for defendants and the facility's

3    patients.    Ms. Bodi was also noted to be "Executive of the Year" for 2012 by Madison Who's Who.

4                            **Plaintiff's cancer diagnosis and treatment.**

5           14.    Starting in approximately February 2011, plaintiff experienced several weeks of

6    persistent high fevers.  In June 2011, plaintiff was diagnosed with a rare cancer called Subcutaneous

7    T-cell Lymphoma.  The diagnosis was confirmed at Stanford Medicine's Cancer Institute in Palo

8    Alto, California.  Romidepsin chemotherapy was recommended.  The cycle of chemotherapy was

9    three weeks on, and one week off.  The treatment is intravenous and took 4 hours to complete, plus

10   travel to and from Palo Alto from her residence.  Plaintiff's side effects of receiving chemotherapy

11   included fatigue, mental confusion, loss of appetite, vomiting, and hair loss.

12          15.    Prior to starting this Romidepsin chemotherapy, plaintiff set up a meeting in July 2011

13   with her supervisor, Rhondella Dickerson, Health Board Chairperson for Defendants SHINGLE

14   SPRINGS BAND OF MIWOK INDIANS and DOES 1-15, and Brenda Adams, Human Resources

15   Director for Defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1-15.  The

16   purpose of the meeting was to let Dickerson and Adams know that she had received a cancer

17   diagnosis and would be starting chemotherapy.  Plaintiff explained the side effects of chemotherapy,

18   and stated that she would need to take time off from work for treatment and rehabilitation.  Plaintiff

19   indicated during the meeting that she wanted to exercise her rights under the "Family and Medical

20   Leave Act of 1993" ("FMLA") to take unpaid, job-protected leave with continuation of her health

21   insurance coverage.

22          16.    At this July 2011 meeting, both Rhondella Dickerson and Brenda Adams told plaintiff

23   that she did not need to use FMLA leave because she was not in danger of losing her job.  Rhondella

24   Dickerson and Brenda Adams also told plaintiff to take off as much time as she needed.  In reliance

25   on these statements, plaintiff did not take FMLA leave.  Instead, she devised a schedule that would

26   maximize her productivity at work while still allowing for weekly chemotherapy treatments.

27          17.    In July 2011, she worked a Monday through Thursday schedule, and received

28   chemotherapy at Stanford on Fridays.  After each Friday chemotherapy treatment, she was very sick

Case No.                                                      COMPLAINT FOR DAMAGES

1   for several days. Saturday and Sunday were the worst, with continuous vomiting and inability to keep

2   food down. Plaintiff would dutifully return to work on Monday, but the vomiting and inability to eat

3   typically continued through Tuesday. Because of the treatment and lack of nourishment, plaintiff

4   frequently felt fatigued and mentally confused. She usually felt better on Wednesday and Thursday,

5   and was alert and not fatigued at work on these days.

6         18.   In August 2011, plaintiff started taking her chemotherapy treatments at a Folsom

7   oncology center so that she could avoid the travel to and from Palo Alto. She would go in for

8   chemotherapy treatment on Friday morning (8am to 12pm) then return to work by 1pm and stay until

9   she became too ill to work. Like in July, plaintiff was fatigued and mentally confused at work on

10   Monday and Tuesday, then alert and not fatigued on Wednesday and Thursday.

11         19.   Plaintiff continued chemotherapy treatment through December 2011. The treatment

12   was successful, and in December 2011 her specialists at Stanford told her that the cancer was in

13   remission. She resumed a normal Monday through Friday schedule at this time. Subsequent blood

14   draws and other testing have confirmed that plaintiff is still in remission.

15         20.   In April 2012, just four months after her chemotherapy regimen concluded, defendants

16   decided to give plaintiff her first performance evaluation in twelve years. This would be plaintiff's

17   second evaluation since becoming an employee in 1997; the first was in 2000. The April 2012

18   evaluation was prepared by James Adams, signed by Human Resources Director/Health Board

19   member Brenda Adams, and on information and belief, was approved, authorized, ratified and

20   acknowledged by SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1 through 15.

21         21.   The written performance evaluation was dated April 3, 2012. However, plaintiff was

22   not made aware of it until June 19, 2012, 78 days after it had been prepared. Defendants did not

23   provide plaintiff with an explanation for this delay.

24         22.   James Adams and Brenda Adams first brought the performance evaluation to

25   plaintiff's attention during a meeting on June 19, 2012. While the evaluation document indicates that

26   this was an "Annual" review, it actually was plaintiff's first performance review since 2000.

27         23.   James Adams advised plaintiff during the June 19, 2012 meeting that the evaluation

28   marks had been based on her performance in the 12-month period of April 2011 through April 2012.

<div align="center">6</div>

24.     Defendants were fully aware that during that 12-month period plaintiff had suffered through her strange fever illness, subsequent cancer diagnosis, and six months of chemotherapy, yet did not take into account her performance during the prior eleven-year period.

25.     During the June 19, 2012 meeting, plaintiff asked if her marks would have been better if she had taken time off from work while undergoing chemotherapy treatment in July through December 2011.  Brenda Adams replied "Yes."

26.     Also during the June 19, 2012 meeting, James Adams told plaintiff that approximately 90% of the items of concern listed in the April 3, 2012 evaluation document had already been corrected by June 19, 2012.

27.     The April 3, 2012 evaluation document rated plaintiff's performance on a scale of 1 to 5.  Plaintiff received two "Unsatisfactory" marks (level 1), fifteen "Improvement Needed" marks (level 2), nine "Meets Job Standard" marks (level 3), and four "Outstanding" marks (level 5).  Her overall rank was level 2, "Improvement Needed."  The pre-typed evaluation form noted that level 2 means "Serious effort is needed to improve performance."

28.     Plaintiff was told by James Adams that she would receive another performance evaluation in three months.  Plaintiff never received this new evaluation.

29.     Until June 19, 2012, plaintiff had not been made aware that defendants had issues with the adequacy of her work performance.  Although defendants' own personnel policies and procedures require them to communicate with employees about areas needing improvement, defendants failed to notify plaintiff of any concerns prior to the June 19, 2012 meeting.

### Plaintiff's ankle injury.

30.     On June 28, 2012, plaintiff tripped and fell at work, severely dislocating her ankle and breaking it in three places.  The injury required surgery, including implantation of a plate, pins and screws.

31.     Plaintiff's treating physicians ordered that plaintiff be off work until July 24, 2012.  A workers' compensation claim was opened on plaintiff's behalf, and plaintiff was placed on temporary disability leave through July 24, 2012.  At this time, plaintiff also applied for FMLA medical leave

7

1   related to her orthopaedic injury.  Plaintiff is informed and believes that her FMLA leave was in

2   effect starting on June 28, 2012.

3         32.    On July 23, 2012, plaintiff visited her orthopaedic surgeon, who ordered that she

4   remain off work through August 6, 2012. Plaintiff informed Brenda Adams of this leave extension in

5   an email, and plaintiff's husband delivered the July 23, 2012 doctor's note to an employee of

6   defendants, with instructions to deliver the note to Brenda Adams.  On the same day, July 23, 2012,

7   Brenda Adams acknowledged receipt of the note via email.  However, Brenda Adams failed and

8   refused to submit the new note to the workers' compensation provider "Tribal First."  As a result of

9   this failure and refusal, plaintiff's temporary disability leave ended on July 24, 2012.

10        33.    After Brenda Adams willfully caused plaintiff's disability leave to lapse, plaintiff was

11   summarily terminated by defendants, and each of them, on or about August 1, 2012.

12                         **Termination**.

13        34.    On August 3, 2012, James Adams, Brenda Adams and Nicholas Fonsenca, Tribal

14   Chairperson for SHINGLE SPRINGS BAND OF MIWOK INDIANS, personally delivered a letter to

15   plaintiff.  The letter, dated August 1, 2012, indicated that plaintiff's employment as Executive

16   Director of the Shingle Springs Tribal Health Program was being terminated "effective immediately."

17   The letter was signed by James Adams, Health Board Chair.

18        35.    This termination was effected at a time when plaintiff was on FMLA leave, and still

19   temporarily disabled because of her June 28, 2012 industrial accident.

20        36.    The August 1, 2012 termination letter stated that plaintiff was being terminated "for

21   inadequate performance" because of alleged deficiencies occurring "during the last several months."

22   However, plaintiff had not been at work since June 28, 2012 because of her ankle injury.

23        37.    The letter also noted that the termination "has nothing to do with your request and use

24   of Family Medical Leave.  All actions referenced above occurred prior to your request for Family

25   Medical Leave and the Board's decision to terminate you from employment with the Tribe is strictly a

26   business decision based on your inadequate performance, especially in light of the Program's

27   financial crisis." These representations conflict with James Adams' statement on June 19, 2012 that

28

Case No.                               COMPLAINT FOR DAMAGES

1   about 90% of the items set forth in the April 3, 2012 performance evaluation had already been

2   corrected.

3          38.     The termination also is contrary to James Adams' assurance on June 19, 2012 that

4   plaintiff would receive another performance evaluation in three months.  In fact, plaintiff worked only

5   six more days after the June 19, 2012 meeting before taking temporary disability leave because of her

6   ankle injury.

7          39.     On information and belief, plaintiff's August 1, 2012 termination letter and in-person

8   August 3, 2012 termination meeting were approved, authorized, ratified and acknowledged by

9   SHINGLE SPRINGS BAND OF MIWOK INDIANS, acting by and through its Tribal Council, led by

10  Chairman Nicholas Fonseca and the Health Board, and DOES 1 through 15.

11         40.     Through Rhondella Dickerson and Brenda Adams's oral assurances of plaintiff's

12  continued employment in July 2011, the "at will" employment relationship between defendants and

13  plaintiff was modified and thus defendants needed "good cause" to terminate her.

14         41.     Defendants failed to establish "good cause" for terminating plaintiff.  James Adams

15  informed plaintiff on June 19, 2012 that about 90% of the items set forth in the April 3, 2012

16  performance evaluation had already been corrected.   Thereafter, plaintiff worked only six days before

17  going out on temporary disability leave following her ankle injury.

18         42.     Plaintiff's 2012 performance evaluation, the first she had received in twelve years, was

19  based upon her performance during a time when she was undergoing intensive chemotherapy and her

20  physical and mental condition were substantially impaired.  The 2012 performance evaluation thus

21  did not represent plaintiff's normal job performance, which had been established over the eleven

22  years prior to her illness.

23         43.     That plaintiff was even working during her chemotherapy is the further fault of

24  Rhondella Dickerson and Brenda Adams, who dissuaded her from taking the FMLA leave to which

25  she was entitled while receiving chemotherapy treatments.  Plaintiff is informed and believes that

26  Dickerson and Adams had a plan to "set plaintiff up" for termination due to a possible personal

27  vendetta.

28

9

**Plaintiff's discovery of troubling practices by defendants.**

44.     In approximately November 2011, defendants terminated the employment of John Verzosa, M.D., the Shingle Springs Tribal Health Program's head Medical Director.  The decision to terminate Dr. Verzosa was made without plaintiff's approval, which was improper given her supervisory role as Executive Director for the Shingle Springs Tribal Health Program.   Plaintiff is informed and believes that Dr. Verzosa was terminated because he had complained about the increased patient load that defendants had been pushing medical personnel to shoulder in order to drive clinic revenues.  Plaintiff inquired numerous times as to why Dr. Verzosa had been fired, and defendants refused to give her a substantive answer.  Plaintiff also objected to defendants' directives regarding the number of patients physicians were required to see each day, because she believed the volume was too high and violated State law and endangered patient health.

45.     Plaintiff also discovered that defendants covered a tribal fiscal shortfall by pulling money out of the Shingle Springs Tribal Health Program.  On information and belief, this accounting maneuver was against the conditions of loans and grants.  At various times during her tenure, plaintiff also discovered other troubling accounting issues and brought them to defendants' attention.

46.     In approximately April 2012, plaintiff learned of a plan to move the office of the Tribal Administration of SHINGLE SPRINGS BAND OF MIWOK INDIANS into the clinic building's third floor.  Plaintiff let it be known that she objected to this move because the clinic building was a health care facility and the space was intended for patient care and treatment.  Plaintiff was told that the plan she had heard about was just a rumor, and that the rumor was not true. However, the Tribal Administration moved its office to the clinic building just seven days after plaintiff's termination.

47.     Plaintiff is informed and believes that defendants chose to terminate her in retaliation for her objection to the termination of Dr. Verzosa, her objection to the endangerment of patient health, her objection to placing the Tribal Administration office in the health clinic, and her objection to the problematic accounting issues, **as well as her need to receive debilitating chemotherapy treatment and later taking medical leave for her ankle injury.**  Plaintiff further believes that defendants seized the opportunity to give her a poor performance evaluation at a time when she had

10

1  been very ill and undergoing aggressive chemotherapy treatment, and used this unfair evaluation as a

2  pretext for her termination.

3  <center>**Plaintiff's Re-hire then Second Termination.**</center>

4      48.    On or about January 28, 2013, plaintiff was re-hired as an Executive Assistant for

5  defendants.  This position paid much less than what she made in her former position as Executive

6  Director.

7      49.    On or about March 21, 2013, plaintiff was put on administrative leave by defendants.

8  On or about April 12, 2013, plaintiff was terminated from her position as an Executive Assistant in a

9  letter signed by Tribal Chairperson Nicholas Fonseca.  The letter indicated that the Tribal Council

10  ratified plaintiff's second termination.  These adverse actions came only after plaintiff sent a

11  confidential and privileged communication to defendants on March 19, 2013 which complained about

12  her wrongful termination and noted a willingness to seek redress in Superior Court.  Plaintiff asserts

13  this second termination is further retaliation and in violation of her right to petition the government

14  and assert rights in a lawful court proceeding.

15      50.    At all times mentioned in this complaint, Government Code sections 12900, et seq.

16  were in full force and effect and were binding on each of the defendants, named and fictitious.  These

17  sections prohibit discrimination against and/or harassment of any individual because of his or her

18  medical condition, sex, race, and national origin (and other prohibitions), require defendants to refrain

19  from discriminating against and harassing any employee on the basis of medical condition, sex, race,

20  and national origin (and other prohibitions), and require an employer to take all reasonable steps

21  necessary to prevent discrimination and harassment from occurring. Cal. Gov. Code

22  §§12940(a),(j)(1), and (k).

23      51.    At all times mentioned in this complaint, Defendants were employers covered under

24  the California Department for Fair Employment and Housing in that Defendants employed five or

25  more employees.  Cal. Gov. Code §§12956(d), 12940(h), 12940(j)(4)(A) (applying rule if defendants

26  employed at least one or more employees).

27      52.    **Plaintiff's Exhaustion of Remedies:**  Within the time provided by law, Plaintiff filed

28  a complaint with the California Department of Fair Employment and Housing ("DFEH"), in full

<center>11</center>

1    compliance with the California Fair Employment and Housing Act found in sections 12900 et seq. of

2    the California Government Code ("FEHA"). On April 19, 2013, plaintiff received a Right-to-Sue

3    Letter of this same date.

**FIRST CAUSE OF ACTION**

**MEDICAL CONDITION DISCRIMINATION**

**(Against all defendants)**

7       53.    Plaintiff incorporates by reference the allegations set forth above as if fully stated

8    herein.

9       54.    California Government Code sections 12940-12951 require Defendants to refrain from

10    discriminating against any employee on the basis of a medical condition, including cancer (among

11    other things) [Govt Code section 12926(i)(1)].

12       55.    As set forth in detail above, defendants SHINGLE SPRINGS BAND OF MIWOK

13    INDIANS (by and through its Tribal Council and Health Board) and DOES 1-15 and each of them

14    discriminated against plaintiff on the basis of her cancer diagnosis and treatment regimen during the

15    course of plaintiff's employment. On or about August 3, 2012, after 12 years as Executive Director

16    with satisfactory, competent and diligent performance to the benefit and profit of defendants, plaintiff

17    was notified by defendants that she was terminated because of poor performance for the period of

18    April 2011 to April 2012. Defendants' claim that plaintiff was being terminated because of

19    performance issues, however, was a pretext to conceal defendants' discrimination against plaintiff on

20    the basis of her medical condition.

21       56.    Plaintiff believes and thereon alleges that her medical condition and treatment was a

22    factor in defendants' decision to terminate her. Such discrimination is in violation of California

23    Government Code sections 12940-12951, and has resulted in damage and injury to plaintiff as alleged

24    herein.

25       57.    As a direct and proximate result of defendants' willful, knowing, and intentional

26    discrimination against plaintiff, plaintiff has sustained substantial losses in earnings and other

27    benefits of employment including but not limited to health insurance. Lack of health insurance is

28    especially difficult for plaintiff given her prior medical history of cancer.

58.     As a direct and proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, she has suffered and will continue to suffer severe emotional distress, consisting of outrage, shock and humiliation, and mental and physical pain and anguish including sleeplessness and stress, all to her damage in a sum in according to proof.

59.     Plaintiff is informed and believes and on that basis alleges that defendants' outrageous conduct as described in this complaint was willful, knowing, intentional, malicious and oppressive, was done with a conscious disregard of plaintiff's right to be free from medical condition discrimination, and was done with an intent to injure plaintiff.  Because of the actions and/or non-actions by owners, partners, officers, directors, board members and/or managing agents of Defendants that employed plaintiff and were plaintiff's supervisors at the time of their employment, plaintiff is entitled to punitive damages from defendants, in an amount according to proof.

60.     In pursuing her legal rights and remedies, including the filing and prosecution of this action, plaintiff has incurred, and continue to incur, legal expenses and attorney's fees.  Plaintiff is entitled to recover said expenses and attorney's fees from Defendants pursuant to section 12965(b) of the California Government Code.

## SECOND CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION

### (Against all defendants)

61.     Plaintiff incorporates by reference the allegations set forth above as if fully stated herein.

62.     Defendants and each of them failed to take reasonable steps to prevent the discrimination directed at plaintiff.   These defendants knew or should have known that plaintiff was discriminated against and harassed on the basis of her medical treatment and medical condition, and failed and refused to stop the discrimination and harassment and/or otherwise protect Plaintiff from this pervasive and unwanted harassment and/or discrimination. By failing to prevent discrimination and harassment from occurring, these defendants violated California Government Code section 12940(i).

13

63. As a direct and proximate result of defendants' unlawful conduct, plaintiff has sustained substantial losses in earnings and other benefits of employment including but not limited to health insurance. Lack of health insurance is especially difficult for plaintiff given her prior medical history of cancer.

64. As a direct and proximate result of defendants' unlawful conduct, plaintiff has suffered and will continue to suffer severe emotional distress, consisting of outrage, shock and humiliation, and mental and physical pain and anguish including sleeplessness and stress.

65. Plaintiff is informed and believe and on that basis alleges that defendants' outrageous conduct as described in this complaint was malicious and oppressive, was done with a conscious disregard of plaintiff's right to be free from harassment and discrimination, and was done with an intent to injure plaintiff such that plaintiff is entitled to punitive damages from defendants. Because of the actions and/or non-actions by owners, partners, officers, directors, board members and/or managing agents of Defendants that employed plaintiff and were plaintiff's supervisors at the time of their employment, plaintiff is entitled to punitive damages from defendants, in an amount according to proof.

66. In pursuing her legal rights and remedies, including the filing and prosecution of this action, plaintiff has incurred, and continues to incur, legal expenses and attorney's fees. Plaintiff is entitled to recover said expenses and attorney's fees from defendants pursuant to section 12965(b) of the California Government Code.

## THIRD CAUSE OF ACTION

### FMLA and CFRA INTERFERENCE

### (Against all Defendants)

67. Plaintiff incorporates by reference the allegations set forth above as if fully stated herein.

68. As set forth above, 29 U.S.C. section 2601, et seq., the Family and Medical Leave Act of 1993 ("FMLA") and California Government Code sections 12945.1 and 12945.2, the California Family Rights Act ("CFRA") protect the rights of workers to take family and medical care leave.

14

69.     By reason of her cancer diagnosis and chemotherapy treatment, plaintiff was entitled to take medical care leave and have her job protected during her absence. However, in July 2011, Rhondella Dickerson and Brenda Adams told plaintiff that she did not need to take FMLA because she was not in jeopardy of losing her job. By reason of this statement, Rhondella Dickerson and Brenda Adams discouraged plaintiff from using FMLA and/or CFRA leave. This interference is in violation of 29 USC 2615(a) and 29 CFR section 825.220(b), and has resulted in damage and injury to Plaintiff as alleged herein.

70.     As a result of this FMLA/CFRA interference, plaintiff remained at work and was unable to perform to her full potential as a direct result of her illness and chemotherapy treatment. Defendants and each of them then used her reduced performance as a justification for their decision to terminate her.

71.     As a direct and proximate result of defendants' willful, knowing, and intentional interference against plaintiff, plaintiff has sustained substantial losses in earnings and other benefits of employment including but not limited to health insurance. Lack of health insurance is especially difficult for plaintiff given her prior medical history of cancer.

72.     As a direct and proximate result of defendants' willful, knowing, and intentional interference, plaintiff has suffered and will continue to suffer severe emotional distress, consisting of outrage, shock and humiliation, and mental and physical pain and anguish including sleeplessness and stress, all to her damage in a sum according to proof.

73.     Because of the actions and/or non-actions by owners, partners, officers, directors, board members and/or managing agents of Defendants that employed plaintiff and were plaintiff's supervisors at the time of their employment, plaintiff is entitled to punitive damages from defendants, in an amount according to proof.

74.     In pursuing her legal rights and remedies, including the filing and prosecution of this action, plaintiff has incurred, and continues to incur, legal expenses and attorney's fees. Plaintiff is entitled to recover said expenses and attorney's fees from defendants pursuant to section 12965(b) of the California Government Code.

///

15

**FOURTH CAUSE OF ACTION**

**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**(Against all defendants)**

75.     Plaintiff incorporates by reference the allegations set forth above as if fully stated herein.

76.     Plaintiff believes and thereon alleges that her cancer medical condition, her workers' compensation claim, her FMLA leave and her complaints to Defendants as set forth above were factors in Defendants' decision to reprimand her by way of the April 2012 performance evaluation, and their later decision to retaliate against her and terminate her employment as Executive Director. Her discharge is in violation of fundamental public policy as set forth in the FEHA laws, the workers' compensation and temporary disability laws, the Federal FMLA Act, and California Government Code sections 12945.1 and 12945.2, as well as state and federal whistleblower protection statutes and has resulted in damages and injury to plaintiff as alleged herein.  Plaintiff's second termination in April 2013 was also wrongful, as she complained about her prior treatment by defendants in the year 2012.

77.     As a direct and proximate result of defendants' wrongful terminations, plaintiff has sustained substantial losses in earnings and other benefits of employment including but not limited to health insurance.  Lack of health insurance is especially difficult for plaintiff given her prior medical history of cancer.

78.     As a direct and proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, she has suffered and will continue to suffer severe emotional distress, consisting of outrage, shock and humiliation, and mental and physical pain and anguish including sleeplessness and stress.

79.     Plaintiff is informed and believes and on that basis alleges that defendants' willful, knowing, intentional and outrageous conduct as described in this complaint was malicious and oppressive, was done with a conscious disregard of plaintiff's rights, and was done with an intent to injure plaintiff.  Because of the actions and/or non-actions by owners, partners, officers, directors,

16

1  board members and/or managing agents Defendants that employed plaintiff and were plaintiff's

2  supervisors at the time of their employment, plaintiff is entitled to punitive damages per Cal. Civ.

3  Code § 3294 from defendants, in an amount according to proof.

4  <div align="center">**FIFTH CAUSE OF ACTION**</div>

5  <div align="center">**RETALIATION**</div>

6  <div align="center">**(Against all defendants)**</div>

7      80.     Plaintiff incorporates by reference the allegations set forth above as if fully stated

8  herein.

9      81.     During the course of Plaintiff's employment with defendants, she complained to

10  defendants and each of them about the accounting issues and her concerns for patient safety at the

11  clinic. Defendants retaliated against her for making these complaints by writing her up unfairly and

12  eventually terminating her employment. On information and belief, plaintiff also was retaliated

13  against for filing a workers' compensation claim, and for taking FMLA and temporary disability

14  leave.

15      82.     In April 2013, while employed by defendants as an Executive Assistant, plaintiff

16  asserted to defendants that her August 2012 termination as Executive Director was wrongful. Upon

17  receipt of plaintiff's notice and in further retaliation, defendants terminated her from the Executive

18  Assistant position.

19      83.     Defendants' treatment of plaintiff was in violation of Government Code section

20  12940(f).

21      84.     As a direct and proximate result of defendants' unlawful conduct, plaintiff has

22  sustained substantial losses in earnings and other benefits of employment including but not limited to

23  health insurance. Lack of health insurance is especially difficult for plaintiff given her prior medical

24  history of cancer.

25      85.     As a direct and proximate result of defendants' unlawful conduct, plaintiff has suffered

26  and will continue to suffer severe emotional distress, consisting of outrage, shock and humiliation,

27  and mental and physical pain and anguish including sleeplessness and stress.

28

<div align="center">17</div>

Case No.                                                        COMPLAINT FOR DAMAGES

86.     Plaintiff is informed and believes and on that basis alleges that defendants' willful, knowing, intentional and outrageous conduct as described in this complaint was malicious and oppressive, was done with a conscious disregard of plaintiff's rights, and was done with an intent to injure plaintiff.  Because of the actions and/or non-actions by owners, partners, officers, directors, board members and/or managing agents of Defendants that employed plaintiff and were plaintiff's supervisors at the time of their employment, plaintiff is entitled to punitive damages per Cal. Civ. Code § 3294 from defendants, in an amount according to proof.

87.     In pursuing her legal rights and remedies, including the filing and prosecution of this action, plaintiff has incurred, and continues to incur, legal expenses and attorney's fees.  Plaintiff is entitled to recover said expenses and attorney's fees from defendants pursuant to section 12965(b) of the California Government Code.

**WHEREFORE**, Plaintiff BETH A. BODI prays for a judgment against SHINGLE SPRINGS BAND OF MIWOK INDIANS and DOES 1 through 15 as follows:

A.     For compensatory damages, including loss of wages and other benefits, and opportunities of employment, according to proof, but not less than the jurisdictional limits of this Court;

B.     For mental and emotional distress damages according to proof;

C.     For exemplary and punitive damages according to proof;

D.     For an award of legal expenses and attorney's fees;

E.     For costs of suit;

F.     For an award of interest, including prejudgment interest at the legal rate; and

G.     For such other and further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff BETH A. BODI demands a trial by jury.

Dated: April 22, 2013          PACIFIC AMERICAN LAW GROUP, PC

By: _____
Wendy L. Hilger
Attorneys for Plaintiff BETH A. BODI

18

SUPERIOR OURT OF THE STATE OF CALIFORNIA
COUNTY OF EL DORADO
3321 Cameron Park Drive
Cameron Park, California 95682
(530)621-5867                    Fax (530)672-2413

CASE NO. PC 20130208    **EL DORADO CO. SUPERIOR C1**

BETH A BODI
vs.                          Plaintiff,

**FILED** APR 22 2013

Defendant.

SHINGLE SPRINGS BAND OF MIWOK INDIANS    BY _____
                                            Deputy

NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE
(Local Rule 7.12.05 and .09)

NOTICE IS HEREBY GIVEN that Case Management and Settlement Conference
authority is delegated to STEPHEN B.R. KELLER, Judge Pro Tem. A
challenge to a judge pro tem on the basis of non-agreement must be
made within 30 days after notice of delegation or be deemed waived.

NOTICE IS HEREBY GIVEN that a CASE MANAGEMENT CONFERENCE in the above
entitled case is set for  2:00 on 07/18/13, in Dept. 10.
3321 Cameron Park Drive, Cameron Park, California.

A Case Management Statement must be filed and served not less than
15 court days before the Conference.

If a party is demanding a jury trial, pursuant to Civil Code of
Procedure section 631(b), a non-refundable jury fee of $150.00 must
be deposited with the court on or before the initial Case Management
Conference date in this action. Failure to timely deposit the funds
will result in a waiver of a jury trial.

At the CASE MANAGEMENT CONFERENCE you will be assigned a Dispute Reso-
lution Conference Date, a Mandatory Settlement Conference Date, and a
Trial Date. In lieu of a Dispute Resolution Conference, the parties
may elect mediation, binding arbitration, or judicial arbitration.

In addition, the court may make orders (1)establishing a discovery
plan, (2)scheduling the exchange of information and discovery, and/or
(3)scheduling dates for concluding Law and Motion.

The Court will require full compliance of El Dorado County Local
Rules, in particular, the rules governing Trial Court Case Management
(rule 7.12.00, et seq.).

You must be prepared to discuss all matters and dates which are the
subjects of the Case Management Conference. Telephonic court appear-
ances are provided through CourtCall to the Court. To make arrange-
ments to appear by telephone, please call the Program Administrator
with CourtCall, at (888) 882-6878 at least five (5) court days prior
to the conference.

CMC1                                          Rev 10/19/12

CLERK'S CERTIFICATE OF SERVICE

I declare under penalty of perjury that I am over the age of 18 and
not a party to the above action; that a copy of NOTICE OF CASE
ASSIGNMENT AND CASE MANAGEMENT CONFERENCE was placed for mailing
through either the United States Post Office or Inter-Departmental
mail on the parties at the address shown herein.
Executed on 04/22/13, in Cameron Park, California.

Delivered to:

WENDY L HILLGER
582 MARKET STREET
SUITE 2009
SAN FRANCISCO CA 94104

Tania Ugrin-Capobianco, Court Executive Officer

By: _____
                    Deputy Clerk

1  PACIFIC AMERICAN LAW GROUP, PC
   David Nied (SBN 136413)
2  Wendy Hillger (SBN 178682)
   582 Market Street, Suite 2009
3  San Francisco, CA  94104
   Telephone: (415) 658-5043
4  david@palgsf.com
   whillger@palgsf.com
5
   Attorneys for Plaintiff Beth Ann Bodi
6

EL DORADO CO. SUPERIOR CT.

FILED   MAY 0 2 2013

BY

Deputy

7

8                SUPERIOR COURT FOR THE COUNTY OF EL DORADO

9                   STATE OF CALIFORNIA - UNLIMITED JURISDICTION

10

11

12  BETH A. BODI                        Case No. PC 20130208

              Plaintiff,                **PROOF OF SERVICE**
13
        vs.
14
    SHINGLE SPRINGS BAND OF MIWOK
15  INDIANS; and DOES 1-15, inclusive,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED
MAY 0 2 2013
BY:

1

ORIGINAL

CMS

PROOF OF SERVICE

Case No. PC 20130208

I am over the age of eighteen years and not a party to the above-captioned matter. My business address is 582 Market Street, Suite 2009, San Francisco, CA 94104 where the services described below took place on the date set forth below:

**Person(s) served:**

*Time of service: 11:30 am*

*Left at reception for Attorneys representing        :*
*Shingle Springs Band of Miwok Indians:*

**Sandra R. McCandless**
Dentons US LLP
525 Market Street, 26th Floor
San Francisco, CA 94105

**Document(s) served:**

   **Summons, Complaint, and Case Management Conference notice**
**Manner of Service:**

__X__   **Personal service.** I delivered a copy of each document listed above to the person(s) at the address listed above. Opposing counsel agreed to accept service of complaint on behalf of their client.

_____   **Mail.** I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the U.S. Postal Service. Such correspondence is deposited with the U.S. Postal Service on the same day in the ordinary course of business in the county in which I work. On the date set forth below, at my place of business, following ordinary business practices, I placed for collection and mailing a copy of each document served, enclosed in a sealed envelope, with postage thereon fully prepaid, each envelope being addressed to one of the person(s) served, in accordance with Code Civ. Proc. § 1013(a).

_____   **Overnight delivery.** On the date set forth below, I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

_____   **E-mail.** By agreement of both parties, the document(s) were sent via electronic mail to the address set forth above. A confirmation e-mail was generated and is on file and available for inspection and copying upon request.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  April 29, 2013

_____
Christine Saechao-Moore

2

Case No. PC 20130208                                        PROOF OF SERVICE

SUPERIOR COURT OF CALIFORNIA
COUNTY OF EL DORADO
3321 CAMERON PARK DRIVE
PLACERVILLE, CA 95667

MAY 2 2 2013

Case PC20130208

RE: NOTICE TO CHANGE HEARING DATE

The matter currently scheduled on Thursday, July 18th in the above-
referenced case, has been changed to Friday, July 19 in Dept 9
at 1:30 PM.

If you have any questions, regarding this calendar change, please
contact Cameron Park at 530.621.5867 between the hours of 8:00
am and 3:00 pm Monday through Friday.


If you scheduled your appearance through Court Call, you will need to
notify them of the change. You may reach Court Call at 888.882.6878.


The Department calendars on the Court's website will also reflect the
change - http://www.eldoradocourt.org/


WENDY L HILLGER
582 MARKET STREET
SUITE 2009
SAN FRANCISCO CA 94104


NCD