1   PAULA M. YOST (State Bar No. 156843)
    paula.yost@dentons.com
2   SANDRA R. MCCANDLESS (State Bar No. 57740)
    sandra.mccandless@dentons.com
3   IAN R. BARKER (State Bar No. 240223)
    ian.barker@dentons.com
4   DENTONS US LLP
    525 Market Street, 26th Floor
5   San Francisco, CA 94105-2708
    Telephone: (415) 882-5000
6   Facsimile: (415) 882-0300

7   Attorneys for Defendants
    SHINGLE SPRINGS BAND OF MIWOK
8   INDIANS, SHINGLE SPRINGS TRIBAL
    HEALTH PROGRAM, SHINGLE SPRINGS
9   TRIBAL HEALTH PROGRAM, and BRENDA
    ADAMS
10

11                      UNITED STATES DISTRICT COURT

12                      EASTERN DISTRICT OF CALIFORNIA

13

14  BETH A. BODI,                          Case No. 2:13-CV-01044 LKK-CKD

15          Plaintiff,                      **MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
16     vs.                                  DEFENDANTS' MOTION TO DISMISS
                                            SECOND AMENDED COMPLAINT
17  SHINGLE SPRINGS BAND OF MIWOK           FOR LACK OF SUBJECT MATTER
    INDIANS; SHINGLE SPRINGS TRIBAL         JURISDICTION ON THE BASIS OF
18  HEALTH PROGRAM; SHINGLE SPRINGS         SOVEREIGN IMMUNITY**
    TRIBAL HEALTH; BRENDA ADAMS (as
19  current Chairperson of the Shingle Springs   [Fed. R. Civ. P. 12(b)(1)]
    Tribal Health Board), and DOES 1 through
20  30, inclusive,                          Date:    September 23, 2013
                                            Time:    10:00 a.m.
21          Defendants.                     Ctrm:    Four

22                                          The Hon. Lawrence K. Karlton

23                                          Complaint Filed: April 22, 2013

24

25

26

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................ 1

II. Relevant Background................................................................. 2

  A. The Parties ......................................................................... 2

  B. Procedural History ........................................................... 3

  C. Summary of Allegations ................................................. 3

III. LEGAL STANDARDS ................................................................. 5

IV. ARGUMENT........................................................................... 6

  A. Under Bedrock Federal Law, Defendants Possess Sovereign Immunity To Suit, Depriving This Court of Power To Adjudicate Plaintiff's Claims. ...................................................................... 6

    1. Immunity Bars Private Suits Against The Tribe...................................... 7

    2. "Shingle Springs Tribal Health Program" Is A Name Under Which The Tribe's Government Operates And Does Not Separately Exist. ................................................. 8

    3. The Shingle Springs Tribal Health Board Is Immune As A Branch Of The Tribe's Government............................. 8

    4. The Tribal Official Sued As Chairperson Of The Tribe's Health Board Possesses The Tribe's Immunity. .............................. 10

  B. Only By The Tribe's Clear Waiver Of Its Immunity, Or Unequivocal Abrogation By Congress, May Suit Proceed Against The Sovereign Tribe.................................................................... 11

  C. Plaintiff Mistakenly Conflates The Applicability Of Federal Law With The Completely Distinct Issue Of Immunity To Suit......................... 13

  D. Neither Congress Nor The Tribe Has Relinquished The Tribe's Sovereign Immunity To Plaintiff's Lawsuit, And Her Theories Of Waiver Are Contrary To Clear Law. ................................. 15

    1. Neither The Receipt Of Federal Funding, Nor The Promise To Comply With Law, Waives Sovereign Immunity. ................. 15

    2. The USDA Loan Transaction Did Not Waive The Tribe's Immunity To Plaintiff's Suit................................... 16

    3. The Tribe, Which Carefully Guards Its Immunity, Has Never Waived Its Sovereign Immunity To Suits By Tribal Employees, Including Health Program Employees.................................. 17

    MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

E.     Plaintiff May Not Circumvent The Tribe's Immunity By Naming A Tribal Official To Obtain Injunctive Relief Binding The Tribe's Government. .................................................................................. 19

     1.     Immunity Bars An Order Requiring The Tribe To Hire Plaintiff, As It Would Require Affirmative Action Of The Sovereign Tribe. .......................................................................................... 20

     2.     The Tribe's Exclusive Rights Of Self-Governance Preclude Injunctive Relief In An Intramural Employment Dispute. ..................... 22

V.     CONCLUSION .......................................................................................... 25

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Allen v. Gold Country Casino*
   464 F. 3d 1044 (9th Cir. 2006) ................................................................................................passim

*Allen v. Smith*
   No. 12-cv-1668-WQH-KSC, 2013 U.S. Dist. LEXIS 35046 (S.D. Cal. Mar. 11, 2013) ........20

*Alvarado v. Table Mountain Rancheria*
   509 F.3d 1008 (9th Cir. 2007) ................................................................................................5

*Am. Title Ins. Co. v. Lacelaw Corp.*
   861 F.2d 224 (9th Cir. 1988) ................................................................................................5

*American Vantage Cos. v. Table Mountain Rancheria*
   292 F.3d 1091 (9th Cir. 2002) ................................................................................................6, 7

*Amerind Risk Mgmt. Corp. v. Malaterre*
   633 F.3d 680 (8th Cir. 2011) ................................................................................................9

*Bales v. Chickasaw Nation Indus.*
   606 F. Supp. 2d 1299 (D.N.M. 2009) ................................................................................................13

*Bassett v. Mashantucket Pequot Tribe*
   204 F.3d 343 (2d Cir. 2000) ................................................................................................12, 13, 14

*Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*
   629 F.3d 1173 (10th Cir. 2011) ................................................................................................10

*C&L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla.*
   532 U.S. 411 (2001) ................................................................................................11, 13, 14, 17

*California v. Quechan Tribe of Indians*
   595 F.2d 1153 (9th Cir. 1979) ................................................................................................12

*Chayoon v. Chao*
   355 F.3d 141 (2d Cir. 2004) ................................................................................................5, 14, 15, 18

*Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization*
   757 F.2d 1047 (9th Cir.1985) ................................................................................................7, 12

*Cook v. Avi Casino Enters., Inc.*
   548 F.3d 718 (9th Cir. 2008) ................................................................................................8, 10

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*
   276 F.3d 1150 (9th Cir. 2001) ................................................................................................20

           MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

*Demontiney v. United States*
    255 F.3d 801 (9th Cir. 2001) ...................................................................................16

*Dillon v. Yankton Sioux Tribe Hous. Auth.*
    144 F.3d 581 (8th Cir. 1998) ...............................................................................16, 17

*Donovan v. Coeur d'Alene Tribal Farm*
    751 F.2d 1113 (9th Cir. 1985) ...................................................................................23

*EEOC v. Cherokee Nation*
    871 F.2d 937 (10th Cir. 1989) ...................................................................................23

*EEOC v. Fond du Lac Heavy Equipment & Construction Co., Inc.*
    986 F.2d 246 (8th Cir. 1993) ...............................................................................23, 25

*EEOC v. Karuk Tribe Housing Authority*
    260 F.3d 1071 (9th Cir. 2001) .........................................................7, 15, 23, 24

*Evans v. McKay*
    869 F.2d 1341 (9th Cir. 1989) ...................................................................................15

*Ex Parte Young*
    209 US 123 (1908) .............................................................................................20, 22

*Fritcher v. Zucco*
    No. 1:11-cv-02071-AWI-JLT, 2012 U.S. Dist. LEXIS 2869
    (E.D. Cal. Jan. 9, 2012) ...............................................................................................9

*Garcia v. Akwesasne Hous. Auth.*
    268 F. 3d 76 (2d Cir. 2001) .......................................................................................13

*Imperial Granite Co. v. Pala Band of Mission Indians*
    940 F.2d 1269 (9th Cir. 1991) ...................................................................................10

*In re Greene*
    980 F.2d 590 (9th Cir. 1992) ...................................................................................6, 8

*Ingrassia v. Chicken Ranch Bingo & Casino*
    676 F. Supp. 2d 953 (E.D. Cal. 2009) ........................................................................8

*J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd.*
    842 F. Supp. 2d 1163 (D.S.D. 2012) ................................................7, 9, 15, 24

*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*
    523 U.S. 751 (1998) .........................................................................................passim

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) .....................................................................................................5

*Larimer v. Konocti Vista Casino Resort, Marina & RV Park*
    814 F. Supp. 2d 952 (N.D. Cal. 2011) ........................................................................8

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

*McClanahan v. Ariz. Tax Comm'n*
411 U.S. 164 (1973)..................................................................19

*Merrion v. Jicarilla Apache Tribe*
455 U.S. 130 (1982)..................................................................11

*Mo. River Servs. v. Omaha Tribe of Neb.*
267 F.3d 848 (8th Cir.2001) ....................................................11

*Mullally v. Havasu Landing Casino*
No. EDCV 07-1626-VAP (JCRx), 2008 U.S. Dist. LEXIS 40565
(C.D. Cal. Mar. 3, 2008) ...........................................................14

*Myers v. Seneca Niagara Casino*
488 F. Supp. 2d 166 (N.D.N.Y. 2006 )...............................13, 14

*Nanomantube v. Kickapoo Tribe*
631 F.3d 1150 (10th Cir. 2011) ........................................16, 17

*NLRB v. Chapa-De Indian Health Program, Inc.*
316 F.3d 995 (9th Cir. 2003) ............................................13, 24

*Okla. Tax Commission v. Citizen Band Potawatomi Indian Tribe of Okla.*
498 U.S. 505 (1991)..................................................................14

*Pan American Co. v. Sycuan Band of Mission Indians*
884 F.2d 416 (9th Cir. 1989) ...............................11, 12, 17

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) ...................................................................22

*Pink v. Modoc Indian Health Project, Inc., et al.*
157 F.3d 1185 (9th Cir. 1998) .......................7, 16, 23, 24

*Puyallup Tribe, Inc. v. Dep't of Game of State of Wash.*
433 U.S. 165 (1977)..................................................................12

*Quieletue Indian Tribe v. Babbitt*
18 F.3d 1456 (9th Cir. 1994) ...................................................12

*Rupp v. Omaha Indian Tribe*
45 F.3d 1241 (8th Cir. 1995) ...................................................11

*Sanderlin v. Seminole Tribe*
243 F.3d 1282 (11th Cir. 2001) ...............................................16, 17

*Santa Clara Pueblo v. Martinez*
436 U.S. 49 (1978)..................................6, 11, 12, 13

*Santa Rosa Band of Mission Indians v. Kings County*
532 F.2d 655 (9th Cir. 1975) ...................................................19

Case No.  2:13-CV-01044 LKK-CKD

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Shermoen v. United States*
    982 F.2d 1312 (9th Cir. 1992) ............................................................................20

*Smith v. Babbitt*
    875 F. Supp. 1353 (D. Minn. 1995), *aff'd*, 100 F.3d 556 (8th Cir. 1996) ...............12

*Squaxin Island Tribe v. State of Washington*
    781 F.2d 715 (9th Cir. 1986) ...............................................................................12

*Three Affiliated Tribes v. Wold Engineering*
    476 U.S. 877 (1986)............................................................................................6, 10

*United States v. Kagama*
    118 U.S. 375 (1886)................................................................................................6

*United States v. U.S. Fidelity & Guaranty Co.*
    309 U.S. 506 (1930)..............................................................................................11

*Ute Distribution Corp. v. Ute Indian Tribe*
    149 F.3d 1260 (10th Cir. 1998) ...........................................................................12

*White Mountain Apache Tribe v. Bracker*
    448 U.S. 136 (1980)..............................................................................................24

*Wichita and Affiliated Tribes of Okla. v. Hodel*
    788 F.2d 765 (D.C. Cir. 1986) .............................................................................12

*Will v. Mich. Dep't of State Police*
    491 U.S. 58 (1989)................................................................................................10

*Wolfe v. Strankman*
    392 F.3d 358 (9th Cir. 2004) .................................................................................5

*Worcester v. Georgia*
    31 U.S. (6 Pet.) 515 (1832) ....................................................................................6

## CALIFORNIA CASES

*Ameriloan v. Superior Court*
    169 Cal. App. 4th 81 (2009) ..................................................................................6

*Big Valley Band of Pomo Indians v. Superior Court*
    133 Cal. App. 4th 1185 (2005) ............................................................................11

*Cal. Parking Servs., Inc. v. Soboba Band of Luiseno Indians*
    197 Cal. App. 4th 814 (2011) ..............................................................................11

*Great Western Casinos v. Morongo Band of Mission Indians*
    74 Cal. App. 4th 1407 (1999) ..............................................................................12

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

*Lawrence v. Barona Valley Ranch Resort & Casino*
  153 Cal. App. 4th 1364 (2007) ..................................................................12

*Middletown Rancheria of Pomo Indians v. W.C.A.B.*
  60 Cal. App. 4th 1340 (1998) ....................................................................23

*Trudgeon v. Fantasy Springs Casino*
  71 Cal. App. 4th 632 (1999) ................................................................10, 11

### OTHER STATE CASES

*Filer v. Tohono O'Odham Nation Gaming Enter.*
  129 P.3d 78 (Ariz. Ct. App. 2006) ...........................................................14

*Gavle v. Little Six, Inc.*
  555 N.W.2d 284 (Minn. 1996) ..................................................................12

### FEDERAL STATUTES

18 U.S.C. § 1161 ....................................................................................14

29 U.S.C. §§ 2601-2654 ...........................................................................14

### OTHER AUTHORITIES

78 Fed. Reg. 26384, 26387 (May 6, 2013) .....................................................2

*Cohen's Handbook of Federal Indian Law* § 7.05[1][b] (2012 ed.) ..............14

Fed. R. Civ. Proc. 12(b)(1) ........................................................................5

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- vii -

1

## I.     INTRODUCTION

Try as Plaintiff might to avoid jurisdictional realities that compel this lawsuit's dismissal, her Second Amended Complaint does not change the fact that her claims are against a sovereign Indian tribe possessing immunity from suit.  Beth Ann Bodi, a member of the federally recognized Shingle Springs Band of Miwok Indians, challenges the Tribe's termination of her employment, first as Executive Director of the Tribe's wholly owned and controlled health clinic on the Tribe's reservation, and subsequently as the Executive Assistant for the Tribe's Chairman.  Unable to seriously challenge that the Tribe's immunity reaches suits challenging all variety of its activities, Plaintiff works to find ways to circumvent that immunity where none exists.  First, Plaintiff pretends Congress can abrogate sovereign immunity by passing a generally applicable statute. Unanimous authority holds Congress can do no such thing.  Second, Plaintiff suggests the Tribe waived its immunity to suit by its employees when entering various agreements to which Plaintiff is a complete stranger.  Both the record and bedrock law belie Plaintiff's theory.

Plaintiff then endeavors to circumvent these barriers by adding names to the caption that do nothing to establish jurisdiction for her lawsuit.   First, she adds the fictitious business name under which the Tribe operates its health program, which is of course nothing other than a "dba" for the Tribe, meaning her lawsuit remains a suit against the Tribe.  Second, she names the policy board to which the Tribe has delegated oversight authority over the health program, subject to the Tribal Council's ultimate control, and which is nothing but an arm of the Tribe protected by its immunity.  Finally, plaintiff names an employee of the Tribe's policy board, apparently mistakenly believing this approach permits injunctive relief amounting to a judicial veto of the Tribal government's decision to remove one of its members from an executive level position charged with overseeing a healthcare clinic for its citizens.

In the end, no matter how Plaintiff casts her claims, or against whom, Plaintiff cannot meet her burden of demonstrating the Court possesses jurisdiction over claims seeking relief against a sovereign Indian nation.  Accordingly, because the Tribe's sovereign immunity stands as an

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 1 -

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   insurmountable jurisdictional barrier to Plaintiff's claims, the Tribe respectfully asks the Court to

2   dismiss her Second Amended Complaint with prejudice.

3   **II.      RELEVANT BACKGROUND**

4           **A.      The Parties**

5           Plaintiff is a member of the sovereign tribal government she has sued—to wit, the Shingle

6   Springs Band of Miwok Indians, which is a federally recognized Indian tribal nation maintaining a

7   government-to-government relationship with the United States (hereinafter "Tribe").  (Second

8   Amended Complaint (also referenced hereinafter as SAC or Complaint) at 2:7-8, 4:16-17; Request

9   for Judicial Notice ("RFJN"), Ex. A (78 Fed. Reg. 26384, 26387 (May 6, 2013) (listing federally

10  recognized "Indian entities," including the "Shingle Springs Band of Miwok Indians, Shingle

11  Springs Rancheria (Verona Tract), California"))).

12          The Tribe's federally owned trust land, the Shingle Springs Rancheria, is located within

13  the exterior boundaries of El Dorado County, and approximately 100 of its nearly 500 members

14  reside on the Tribe's reservation (SAC at 2:8-10), including Plaintiff.  (Declaration of Ernest

15  Vargas, Jr. ("Vargas Decl."), ¶¶ 20, 21.)   Since approximately 1995, the Tribe has operated a full-

16  service health clinic on its Rancheria, which is land the United States holds in trust for the Tribe's

17  sovereign use and benefit.  (SAC at 2:27-3:16; Vargas Decl., ¶ 20.)  The Tribe operates the clinic

18  under the name the "Shingle Springs Tribal Health Program."  (Vargas Decl., ¶¶ 20, 24, Ex. FF.)

19  The clinic is wholly owned by the Tribe, and has no corporate existence separate from the Tribe

20  under federal, state, or tribal law.  (*Id.*.)  The Tribe funds its clinic with money from its sovereign

21  treasury, which the Tribe acquires in large part from grants and other arrangements the Tribe

22  enters with federal and state governmental entities.  (*Id.*, ¶ 22.)  For at least the last five years the

23  clinic has operated at a deficit, with its expenditures exceeding its revenue.  (*Id.*, ¶ 25.)  A priority

24  of the Tribe's health program is to provide health care to members of the Tribe, including the

25  Tribal citizenry and families living on and near its Rancheria, as well as other Indian persons who

26  reside on and near the Reservation.  (*Id.*, ¶ 22.)

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

The Tribe runs the health clinic through the Shingle Springs Tribal Health Board, a governmental unit comprised of nine directors selected from the Tribe's membership and staffed and controlled by the Tribal Council, the Tribe's governing body.  (Vargas Decl., ¶¶ 4, 23, Ex. B at 3-4 (Arts. III, V).)  At its sole discretion, the Tribal Council appoints Health Board directors and may remove them, with or without cause.  (*Id.*)  The Health Board elects a Chairperson to preside at all meetings of the Board.  (*Id.*, ¶¶ 4, 23, Ex. B at 3 (Art. III, § 2).)  Plaintiff sues Brenda Adams in her official capacity as Chairperson of the Shingle Springs Tribal Health Board.  (SAC at 4:10-12.)

### B.   Procedural History

On April 22, 2013, Plaintiff filed a complaint for damages against the Tribe in El Dorado Superior Court.  (Docket Number ("Doc.") 1 at 7.)   On May 28, 2013, the Tribe timely removed the action to this Court on the ground that Plaintiff's claims arose under federal law, namely, the Family And Medical Leave Act.  (Doc. 1.)  After the Tribe moved to dismiss the complaint on sovereign immunity grounds (Doc. 5), Plaintiff filed a First Amended Complaint, adding allegations against the Tribe's health program, the Tribe's Health Board, and the chairperson of the Health Board.  (Doc. 7.)  The Tribe withdrew its motion so it could file a single motion to dismiss the amended complaint.  (Doc. 13.)  Because Plaintiff erroneously failed to include the health board in the caption of her First Amended Complaint, the Court granted the parties' stipulation permitting Plaintiff to file a Second Amended Complaint adding the Health Board to the caption, and agreeing to a briefing schedule for a forthcoming motion to dismiss.  (Doc. 16.) Plaintiff filed her Second Amended Complaint on July 12, 2013.  (Doc. 17.)

### C.   Summary of Allegations

According to Plaintiff's Second Amended Complaint, at various times she has worked for her Tribe as an independent contractor, an administrative assistant, interim executive director of the Tribe's health program, and as executive director of the Tribe's health program.  (SAC at 6:11-19.)  She further alleges she was terminated from her executive director position in 2006, and later rehired by the Tribe.  (*Id.* at 7:10-14.)

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

Plaintiff alleges that, in July 2011, she began chemotherapy treatments.  (SAC at 8:17-23.) She contends that nearly a year later, in April 2012, the Human Resources Director of the Tribe's Health Board gave her a performance evaluation indicating the need for improvement.  (SAC at 9:11-18.)  Thereafter, in June 2012, she allegedly suffered an ankle injury while working for the Tribe, and applied for leave under the Family Medical Leave Act.  (*Id.* at 10:22-24.)  According to the Complaint, the Tribe terminated plaintiff as the executive director of its health program on or about August 1, 2012, based on her "inadequate performance, especially in light of the [health program's] financial crisis."  (*Id.* at 11:20-27.)  Plaintiff alleges, however, that the stated basis of her termination was pretextual, and that she was actually terminated for her taking FMLA leave and other allegedly improper reasons.  (*Id.* at 13:24-14:3.)  She further alleges her wrongful termination was "approved, authorized, ratified and acknowledged" by the Health Board "and possibly others in the Tribal Council."  (*Id.* at 12:7-10.)

According to the Complaint, and after Plaintiff's alleged "pre-textual" termination from the health clinic, the Tribe rehired Plaintiff.  Plaintiff was hired to work as an executive assistant for the Tribe's Chairman in January 2013, before being placed on administrative leave in March 2013. (SAC at 14:5-11.)  Plaintiff alleges the Tribe terminated her, by letter from Tribal Chairman Nicholas Fonseca, in April 2013, in response to her notice that she intended to sue the Tribal government for which she worked.  (*Id.*)

Plaintiff concedes the Tribe possesses sovereign immunity to suit, but alleges the Tribe relinquished that immunity here.  (SAC at 4:16-5:16.)  Plaintiff generally avers that "defendants have explicitly waived their sovereign immunity for civil lawsuits by its employees as a result of Tribal Council resolutions to obtain State and Federal funding, loans, grants, Medicare/Medi-Cal patient reimbursement payments and California licenses for use at the" Tribe's health program. (*Id.* at 4:26-5:2.)

Plaintiff also alleges that a "Limited Waiver" in connection with United States Department of Agriculture Rural Development's Community Facilities Program permits her to bring a private employment suit against her Tribe.  (SAC at 5:2-11.)  She separately expresses her "belief" that

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 4 -

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   "waivers were required by other State and Federal programs that were in effect during the time of

2   plaintiff's employment, including but not limited to the Children's Health Insurance Program

3   Reauthorization act, the Substance Abuse and Mental Health Services Administration, the Tribal

4   Personal Responsibility Education Program and others." (*Id.* at 5:12-16.)

5   **III.    LEGAL STANDARDS**

6          As a court of limited jurisdiction, this Court may only assume jurisdiction over the subject

7   matter of a particular lawsuit if there exists a specific grant of power. *Kokkonen v. Guardian Life*

8   *Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   Federal subject matter jurisdiction cannot "be

9   expanded by judicial decree," and it is "presumed that a cause lies outside this limited

10  jurisdiction." *Id.*  Moreover, the party seeking to invoke the Court's jurisdiction has the burden to

11  establish it. *Id.*

12         "[T]ribal immunity precludes subject matter jurisdiction in an action against an Indian

13  tribe." *Alvarado v. Table Mountain Rancheria,*, 509 F.3d 1008, 1015-16 (9th Cir. 2007).  This

14  means that "[o]n a motion invoking sovereign immunity to dismiss for lack of subject matter

15  jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that

16  jurisdiction exists." *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (citation and quotation

17  omitted).

18         A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) can be a

19  facial attack, confined to the allegations of the complaint, or a factual attack, with the court's

20  consideration of extrinsic evidence relevant to its power to hear the case. *See generally Wolfe v.*

21  *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  On a factual attack, as on a facial attack, the

22  plaintiff, as the party invoking the Court's jurisdiction, bears the burden of demonstrating that

23  jurisdiction exists. *Wolfe*, 392 F.3d at 362.  Although on a factual attack the plaintiff may not rest

24  on her pleadings in the face of extrinsic evidence revealing the absence of jurisdiction, the

25  allegations of the complaint constitute judicial admissions "which have the effect of withdrawing a

26  fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v.*

27  *Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citation omitted).

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

1

## IV.    ARGUMENT

2      As shown below, Plaintiff cannot meet her burden of demonstrating the existence of

3  subject matter jurisdiction because the face of her Complaint and indisputable extrinsic evidence

4  confirm this Court lacks power to adjudicate Plaintiff's employment claims against her sovereign

5  Tribal government.

6

### A.    Under Bedrock Federal Law, Defendants Possess Sovereign Immunity To Suit, Depriving This Court of Power To Adjudicate Plaintiff's Claims.

7

8      As the U.S. Supreme Court enunciated long ago, Indian tribes "are 'distinct, independent

9  political communities, retaining their original natural rights' in matters of local self-government."

10  *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55 (1978) (quoting *Worcester v. Georgia*, 31 U.S. (6

11  Pet.) 515, 559 (1832)).  Though no longer "possessed of the full attributes of sovereignty" (*United

12  *States v. Kagama*, 118 U.S. 375, 381 (1886)), "Indian tribes have long been recognized as

13  possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."  *Santa*

14  *Clara Pueblo*, 436 at 58 (internal quotations and citations omitted); *see American Vantage Cos. v.*

15  *Table Mountain Rancheria*, 292 F.3d 1091,1096 (9th Cir. 2002) (tribes are "aboriginal entities

16  antedating the federal [and state] government[s]" and are "domestic dependent nations" (internal

17  quotations and citations omitted; Ninth Circuit's alterations)).

18      Because preserving tribal resources and autonomy is vitally important, tribal immunity is

19  broad, extending to commercial and governmental activities, both on and off the reservation.  *See*

20  *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 760 (1998) ("Tribes

21  enjoy immunity from suits on contracts, whether those contracts involve governmental or

22  commercial activities . . . ."); *American Vantage Cos.*, 292 F.3d at 1100 ("A tribe does not shed

23  immunity merely by embarking on a commercial enterprise."); *Ameriloan v. Superior Court*, 169

24  Cal. App. 4th 81, 89-90 (2009).

25      Tribal immunity is, in fact, jealously guarded by Congress (*Three Affiliated Tribes v. Wold*

26  *Engineering*, 476 U.S. 877, 890 (1986)), and broader than the immunity enjoyed by foreign

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

nations and the States.  *See In re Greene*, 980 F.2d 590, 594-95 (9th Cir. 1992) (noting limits on state immunity as compared to tribes).

### 1.  Immunity Bars Private Suits Against The Tribe.

Tribal immunity insulates the government and all of its agencies and entities, including tribally owned and operated health clinics.  *See Kiowa Tribe*, 523 U.S. 751 (1998) (holding that sovereign immunity applied to tribal commercial and governmental activities); *J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd.*, 842 F. Supp. 2d 1163, 1176-77 (D.S.D. 2012) (finding tribal health program immune).

In briefing of the Tribe's previous motion to dismiss, Plaintiff erroneously suggested that sovereign immunity applied only to "purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations."  (Opposition To Tribe's Motion To Dismiss For Lack of Subject Matter Jurisdiction On The Basis Of Sovereign Immunity, filed June 24, 2013 (Doc. 9) ("First Opposition"), at 6:19-7:3.)  Of course, that is not the law.  The Supreme Court and lower courts have repeatedly confirmed that immunity applies to the full range of tribal governmental and commercial ventures.  *Kiowa Tribe*, 523 U.S. at 760 (holding immunity applies to "governmental or commercial activities" whether "on or off a reservation"); *accord American Vantage Cos.*, 292 F.3d at 1100; *see, e.g.*, *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (tribal casino); *Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization*, 757 F.2d 1047, 1050, 1052 (9th Cir. 1985), *rev'd in part on other grounds*, 474 U.S. 9 (1985) (tribe selling cigarettes to non-Indians); *J.L. Ward Assocs., Inc.*, 842 F. Supp. 2d at 1176-77 (tribal health program).[1]

---

[1]    Plaintiff's citation to cases involving suits by the United States or federal agencies or officials are inapposite to the immunity analysis here, as Indian tribes lack immunity to claims by the federal government.  (First Opposition at 6:19-7:3.)  *See, e.g.*, *EEOC v. Karuk Tribe Housing Authority*, 260 F.3d 1071, 1075 (9th Cir. 2001) ("Indian tribes do not, however, enjoy sovereign immunity from suits brought by the federal government.").  As discussed below in section IV.E.2, however, the inapplicability of federal statutes to intramural tribal matters under this line of cases would present an independent barrier to Plaintiff's suit, even if she could somehow circumvent the Tribe's immunity to her suit.

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 7 -

Plaintiff admits the Tribe is "a federally-registered and recognized Indian tribal government," so it possesses sovereign immunity.  (SAC at 2:7-8, 4:16-26; *see also* RFJN, Ex. A.).

### 2. "Shingle Springs Tribal Health Program" Is A Name Under Which The Tribe's Government Operates And Does Not Separately Exist.

The Tribe's immunity also bars Plaintiff's claims naming "Shingle Springs Tribal Health Program," the name under which the Tribe operates its wholly owned health clinic.  *In re Greene*, 980 F.2d at 596-97 (holding "wholly-owned business" of Tribe selling furniture possessed immunity); *Ingrassia v. Chicken Ranch Bingo & Casino*, 676 F. Supp. 2d 953, 957 (E.D. Cal. 2009) (finding immunity barred claims against a wholly owned casino operated by the tribe under a fictitious business name).

The tribal health program does not exist separately from the Tribe and has no existence under federal, state, or tribal law.  (Vargas Decl., ¶¶ 2, 20.)  "Shingle Springs Tribal Health Program" is registered with the State of California as a fictitious name by which the Tribe does business.  (¶ 24, Ex. FF.)  The Tribe secures funding for the Tribe's health program through government-to-government agreements it enters in the Tribe's name.  ( ¶ 25.)  The health program's funding remains part of the Tribe's treasury and the program's gains and losses count as gains and losses of the Tribe itself.  (*Id.*)  Accordingly, a suit against the Tribe's health program is a suit against the Tribe itself, and therefore barred by the Tribe's immunity.

### 3. The Shingle Springs Tribal Health Board Is Immune As A Branch Of The Tribe's Government.

The Shingle Springs Tribal Health Board is an arm of the Tribe's government, necessarily possessing its immunity.  "When the tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe."  *Allen*, 464 F.3d at 1046.  In evaluating whether an entity possesses the tribe's immunity, the Ninth Circuit has considered whether the tribe wholly owns and operates the entity, such that a suit against the entity would adversely impact the tribe's treasury.  *Id.* at 1047 (recognizing protection of a tribe's sovereign treasury "is one of the historic purposes of sovereign immunity"); *Cook v. Avi Casino Enters., Inc.*, 548 F.3d

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 8 -

718, 725-26 (9th Cir. 2008).  The Ninth Circuit has also considered whether the entity was created under tribal law and governed by tribal members.  *Cook*, 548 F.3d at 726; *see Larimer v. Konocti Vista Casino Resort, Marina & RV Park*, 814 F. Supp. 2d 952, 955 (N.D. Cal. 2011) (finding tribal administrator's affidavit attesting (1) that tribal entity was "wholly owned and operated by the" tribe; and (2) that the tribe's business committee "is responsible for the operation of the" entity established it was "an arm of the tribe" possessing immunity); *J.L. Ward Assocs., Inc.*, 842 F. Supp. 2d at 1176-77 (finding tribal health program immune where it was formed to provide health care and related services to tribal members, governed by tribal representatives, and where immunity would further tribal autonomy and tribal self-determination); *Fritcher v. Zucco*, No. 1:11-cv-02071-AWI-JLT, 2012 U.S. Dist. LEXIS 2869, at **5-7 (E.D. Cal. Jan. 9, 2012) (extending immunity to tribe's housing authority and its director); *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685 (8th Cir. 2011) (holding self-insurance corporation formed by three tribes possessed sovereign immunity).

The Health Board serves as the policy board for the Tribe's health program.  (Vargas Decl., ¶¶ 4, 26, Ex. B at 1 (Art. II, § 1(A)).)  On a monthly basis, representatives of the health program report to the Health Board on the status of the health program and to discuss policy governing the health program.  (*Id.*, ¶ 26.)  The Health Board is governed by bylaws promulgated by the Tribe's governing body, its Tribal Council.  (*Id.*, ¶ 4, Exs. B, C.)  The bylaws give the Tribal Council complete discretion to appoint and remove members of the Health Board, all of whom must be members of the Tribe.  (*Id.*, ¶ 4, Ex. B, at 3-4 (Arts. III, V).)  Because the Health Board is completely funded with money from the Tribe's treasury, and does not possess financial resources separate from the Tribe's, any judgment against the Health Board would deplete the Tribe's sovereign treasury.  (*Id.*, ¶ 25.)

Immunity of the Tribe's Health Board furthers the purposes of sovereign immunity.  The Tribal Council has delegated to its Health Board the authority to run the Tribe's health program. (Vargas Decl., ¶¶ 4, 23, Ex. B.)  The health program is a quintessential exercise of self

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 9 -

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

governance, which provides care to the Tribe's citizens and families living on its Rancheria and in the surrounding areas.  (*Id.*, ¶ 22.)  *See J.L. Ward Assocs., Inc.*, 842 F. Supp. 2d at 1176-77.

Tribal governing bodies, like all governments, must often form governmental departments to carry out specialized tasks.  (Vargas Decl., ¶ 27.)  Indeed, the Tribe has formed several such governmental committees, including an enrollment committee, election committee, gaming commission, and environmental department, to name a few.  (*Id.*)  Denying immunity to governmental entities like the tribally controlled Health Board would effectively preclude this essential exercise in self-governance.  *See Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1195 (10th Cir. 2011) (extending immunity to entities closely related to a tribe "plainly promote[s]" policies favoring tribal self-determination); *Three Affiliated Tribes*, 476 U.S. at 890 ("The common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty and self-governance.").  If forming a governmental entity subordinate to the Tribe's governing body potentially subjected that entity to suit, merely by virtue of the fact that the entity is subordinate to the governing body, the Tribal Council would be forced to directly administer an increasingly diverse array of tribal enterprises and businesses to the detriment of the Tribe and its interests.  Accordingly, the policies underlying sovereign immunity and tribal self-governance require that the Health Board possess the Tribe's immunity.

### 4.  The Tribal Official Sued As Chairperson Of The Tribe's Health Board Possesses The Tribe's Immunity.

Finally, consistent with the immunity doctrine's protective purpose, sovereign immunity "extend[s] to tribal officials when acting in their official capacity and within the scope of their authority."  *Cook*, 548 F.3d at 727 (citation omitted); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . . is no different from a suit against the State itself." (citations omitted)).  Thus, "a plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity."  *Cook*, 548 F.3d at 727 (citation and quotations omitted); *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir.

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

1   1991) (upholding dismissal on basis of immunity despite claims against officials, since "it is

2   difficult to view the suit against the officials as anything other than a suit against the Band");

3   *Trudgeon v. Fantasy Springs Casino*, 71 Cal. App. 4th 632, 643-44 (1999) (tribe's sovereign

4   immunity protects tribal corporation formed to operate tribal casino as well as individual casino

5   employees).

6       Plaintiff sues Brenda Adams in her official capacity as Chairperson of the Shingle Springs

7   Tribal Health Board (SAC at 4:11-12), and she does so for actions taken in the course of carrying

8   out her official tribal duties.  (*See, e.g.*, *id.* at 19:1-3 (alleging actions "on behalf of the TRIBE as

9   its Human Resources Director and concurrent TRIBAL HEALTH BOARD member").)

10  Accordingly, Ms. Adams possesses the Tribe's immunity.

11

12      **B.      Only By The Tribe's Clear Waiver Of Its Immunity, Or Unequivocal
                   Abrogation By Congress, May Suit Proceed Against The Sovereign Tribe.**

13      Tribal governments like Defendants may only be sued if they actually explicitly and

14  unambiguously waive (or Congress unequivocally abrogates) this broad right to immunity.  *Kiowa*

15  *Tribe*, 523 U.S. at 754, 757, 760.  Because the Tribe's effective waiver of its immunity turns on its

16  consent to suit (*United States v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506, 514 (1930)), waivers

17  "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo,* 436 U.S. at 58-59;

18  *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) (tribe's sovereign immunity

19  remains intact "unless surrendered in unmistakable terms"); *Rupp v. Omaha Indian Tribe*, 45 F.3d

20  1241, 1245 (8th Cir. 1995) ("nothing short of an express and unequivocal waiver can defeat the

21  sovereign immunity of an Indian nation").

22      As a result, "[c]ourts construe waivers of a tribe's sovereign immunity strictly and hold a

23  strong presumption against them. . . .  This hurdle can only be overcome if a tribe's waiver was clear

24  and unequivocal."  *Cal. Parking Servs., Inc.  v. Soboba Band of Luiseno Indians*, 197 Cal. App. 4th

25  814, 820 (2011) (citations omitted); *see also C&L Enters. v. Citizen Band Potawatomi Indian Tribe*

26  *of Okla.*, 532 U.S. 411, 418 (2001) (tribe's waiver must be "clear"); *Pan Am. Co. v. Sycuan Band of*

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

1   *Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989) ("tribal sovereign immunity remains intact unless

2   surrendered in express and unequivocal terms").

3      In addition, "[b]ecause a waiver of immunity "'is altogether voluntary on the part of [a tribe],

4   it follows that [a tribe] may prescribe the terms and conditions on which it consents to be sued."'"

5   *Big Valley Band of Pomo Indians v. Superior Court,* 133 Cal. App. 4th 1185, 1193 (2005) (quoting

6   *Mo. River Servs. v. Omaha Tribe of Neb.*, 267 F.3d 848, 852 (8th Cir.2001)).  "[A]ny conditional

7   limitation imposed [on a waiver of sovereign immunity] must be strictly construed and applied."

8   *Lawrence v. Barona Valley Ranch Resort & Casino*, 153 Cal. App. 4th 1364, 1369 (2007); *Great*

9   *Western Casinos v. Morongo Band of Mission Indians*, 74 Cal. App. 4th 1407, 1420 (1999) (holding

10  court lacked jurisdiction where "tribe agreed to waive its sovereign immunity and consent to suit, but

11  only in a narrowly defined situation" not present in that case).

12     Finally, equitable considerations have no bearing on whether a tribal government may be

13  sued, as sovereign immunity is a question of power, not equity.  *Puyallup Tribe, Inc. v. Dep't of*

14  *Game of State of Wash.*, 433 U.S. 165, 171-72 (1977); *see also California v. Quechan Tribe of*

15  *Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979) ("Sovereign immunity involves a right which courts

16  have no choice, in the absence of a waiver, but to recognize."); *Pan Am. Co.,* 884 F.2d at 419 (tribal

17  sovereignty is not "subject to the vagaries of the commercial bargaining process or the equities of a

18  given situation"); *Ute Distribution Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1267 (10th Cir. 1998)

19  ("[T]he Supreme Court has refused to find a waiver of tribal immunity based on policy concerns,

20  perceived inequities arising from the assertion of immunity, or the unique context of a case.").

21     In practice, these rules have resulted in strict construction of the actions necessary to effect

22  a waiver of an Indian tribe's immunity.  *See, e.g.*, *Quieletue Indian Tribe v. Babbitt*, 18 F.3d 1456,

23  1460 (9th Cir. 1994) (tribe's voluntary participation in proceedings "is not the express and

24  unequivocal waiver of tribal immunity that we require in this circuit"); *Squaxin Island Tribe v.*

25  *State of Washington*, 781 F.2d 715, 723 (9th Cir. 1986) (sovereign immunity barred state's

26  counterclaim in suit filed by tribe); *Chemehuevi Indian Tribe*, 757 F.2d at 1053.  Indeed, as courts

27  throughout the nation have recognized, "the standard the Supreme Court has established for a

28

DENTONS US LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 12 -

1   waiver of tribal sovereignty is extremely difficult to satisfy." *Smith v. Babbitt*, 875 F. Supp. 1353,

2   1361 n.4 (D. Minn. 1995), *aff'd*, 100 F.3d 556 (8th Cir. 1996); *see also Gavle v. Little Six, Inc.*,

3   555 N.W.2d 284, 298 (Minn. 1996) (noting "high threshold on the issue of a tribe's waiver of its

4   sovereign immunity").  Federal appellate decisions are in accord with the above propositions.[2]

5

6   ### C.   Plaintiff Mistakenly Conflates The Applicability Of Federal Law With The Completely Distinct Issue Of Immunity To Suit.

7        "To abrogate tribal immunity, Congress must 'unequivocally' express that purpose." *C&L*

8   *Enters., Inc.*, 532 U.S. at 418 (quoting *Santa Clara Pueblo*, 436 U. S. at 58).  Ignoring this

9   established principle, Plaintiff assumes that a statute general enough to apply to a Tribe evinces

10  Congress's intent to abrogate the Tribe's immunity.  (SAC at 4:20-25.)  That assumption is

11  contrary to law.[3]

12       "[W]hether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for

13  violating the statute are two entirely different questions." *Fla. Paraplegic Ass'n v. Miccosukee*

14  *Tribe*, 166 F.3d 1126, 1128-35 (11th Cir. 1999) (emphasis in original); *accord NLRB v. Chapa-De*

15  *Indian Health Program, Inc.*, 316 F.3d 995, 1002 (9th Cir. 2003) (analyzing whether general

16  federal statute applied to entity with a nexus to an Indian tribe, but emphasizing "the question of

17  sovereign immunity . . . is different from whether a statute applies"); *Garcia v. Akwesasne Hous.*

18  *Auth.*, 268 F.3d 76, 86 n.5 (2d Cir. 2001) ("[T]he fact that a statute applies to Indian tribes does

19  not mean that Congress abrogated tribal immunity in adopting it." (quoting *Bassett v.*

20  *Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2d Cir. 2000))); *Bales v. Chickasaw Nation*

21  *Indus.*, 606 F. Supp. 2d 1299, 1302, 1307-08 (D.N.M. 2009) (recognizing that "Plaintiff

22  _____

23  [2]    *See, e.g., Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2d Cir. 2000) ("a tribe does not waive its immunity merely by participating in" off-reservation commercial activities);

24  *Wichita and Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 773 (D.C. Cir. 1986) ("In holding that a tribe may consent to be sued, it is imperative to caution, however, that such consent

25  'cannot be implied but must be unequivocally expressed.'" (quoting *Santa Clara Pueblo*, 436 U.S. at 58.)).

26  [3]    To be sure, as discussed in section IV.E.2 below, even generally applicable statutes that by their terms might otherwise apply are of no effect in circumstances like these involving internal

27  tribal disputes.  But this inquiry is independent of the immunity analysis, and would bar Plaintiff's suit even if the Tribe had somehow waived its immunity to this suit.

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 13 -

1   inappropriately conflates the two distinct and separate concepts of applicability of a statute to a

2   tribe and tribal sovereign immunity" and holding *Tuscarora/Coeur d'Alene* test of applicability of

3   federal statutes irrelevant to "whether a tribal entity enjoys sovereign immunity from suit").

4           Thus, even when federal or state laws apply to an Indian tribe, immunity still bars

5   unconsented private suits.  The Indian Civil Rights Act applies to Indian tribes, but a tribe's

6   sovereign immunity prevents judicial enforcement of the Act against the tribe by litigation seeking

7   damages or injunctive relief.  *Santa Clara Pueblo*, 436 U.S. at 57-58.  The State of Oklahoma's

8   tax on sales to non-Indians may apply to an Indian tribe, but the tribe remains immune from suit to

9   collect unpaid state taxes.  *Okla. Tax Commission v. Citizen Band Potawatomi Indian Tribe of

10  Okla.*, 498 U.S. 505, 512-14 (1991).  The Americans with Disabilities Act accessibility provisions

11  apply to a tribal casino, but immunity still bars a private suit to enforce the statute.  *Fla.

12  Paraplegic Ass'n*, 166 F.3d at 1128-35.  The authorities affirming this principle in a variety of

13  contexts are legion.[4]

14          The federal statute Plaintiff seeks to enforce here (the Family Medical Leave Act

15  (29 U.S.C. §§ 2601-2654)) (SAC at 18:17-20:13) contains no provision subjecting Indian tribal

16  governments to its terms, let alone "unequivocally express[ing]" Congress's intent to subject tribes

17  to private suit in any court of law.  *C&L Enters., Inc.*, 532 U.S. at 418.  Indeed, every known court

18  to address whether the FMLA expressly abrogates tribal sovereign immunity has held it does not.

19  *Chayoon*, 355 F.3d at 143 (holding immunity barred federal suit because "[t]he FMLA makes no

20  reference to the 'amenity of Indian tribes to suit'" (quoting *Fla. Paraplegic Ass'n*, 166 F.3d at

21  1133)); *see also Myers v. Seneca Niagara Casino*, 488 F. Supp. 2d 166, 169 (N.D.N.Y. 2006 )

22

23  ---
[4]     *See Kiowa Tribe*, 523 U.S. at 755 (even though state laws may apply to tribal activities
occurring within the state but outside Indian country, Indian tribes are still immune from suit to
24  enforce those laws); *Bassett*, 204 F.3d at 357 (whether or not federal Copyright Act is a statute
of general application, immunity bars private copyright claims); *Filer v. Tohono O'Odham
25  Nation Gaming Enter.*, 129 P.3d 78, 82-84 (Ariz. Ct. App. 2006) (although tribal casino was
subject to state liquor regulation under federal statute (18 U.S.C. § 1161), casino and employees
26  were immune to suit for dram shop liability for serving intoxicated patron); *Cohen's Handbook
of Federal Indian Law* § 7.05[1][b], n.27 (2012 ed.) ("The Supreme Court has consistently
27  distinguished between the questions of whether tribal activities are subject to state laws and
whether the tribe may be sued to enforce those laws.").

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

1  ("Congress has not expressly abrogated the sovereignty of Indian Nations in the FMLA . . . [and]

2  the only other way a Nation may be sued under the FMLA is if the Nation itself *expressly* and

3  *clearly* waived and relinquished its immunity from suit." (emphasis in original)); *Mullally v.*

4  *Havasu Landing Casino*, No. EDCV 07-1626-VAP (JCRx), 2008 U.S. Dist. LEXIS 40565, at **6-

5  7 (C.D. Cal. Mar. 3, 2008) (finding immunity barred FLSA suit against tribal casino because

6  "Congress has not abrogated tribal sovereign immunity for violations of the Family and Medical

7  Leave Act" (citing *Chayoon*, 355 F.3d at 143)).

8        None of the cases upon which Plaintiff relied in past briefing supports her legally

9  untenable position that a generally applicable statute abrogates sovereign immunity.  (First

10  Opposition at 6:19-7:3.)  In each case, the court only had subject matter jurisdiction to evaluate

11  whether the federal statute applied because the tribes lacked immunity by virtue of the federal

12  government bringing the lawsuit.  *See, e.g.*, *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071,

13  1075 (9th Cir. 2001).

14        Because Congress has not unequivocally subjected the Tribe to private suit on any of

15  Plaintiff's claims, immunity deprives this Court of subject matter jurisdiction.

16        **D.    Neither Congress Nor The Tribe Has Relinquished The Tribe's Sovereign
              Immunity To Plaintiff's Lawsuit, And Her Theories Of Waiver Are**
17        **Contrary To Clear Law.**

18        Absent unequivocal congressional abrogation, only the Tribe's clear and express waiver of

19  immunity creates federal court jurisdiction.  *Kiowa Tribe,* 523 U.S. at 754.  The Tribe has simply

20  never waived its immunity to Plaintiff's claims, and each of her waiver theories fail.

21        Plaintiff contends that "defendants agreed to follow State and Federal laws and explicitly

22  waived their immunity" through various "State and Federal programs."  (SAC at 5:9-16.)  First,

23  Plaintiff contends a "Limited Waiver" in connection with USDA's Community Facilities Program

24  loan permits authorizes her suit against the Tribe.  (*Id.* at 5:2-11.)  Second, Plaintiff speculates that

25  "waivers were required by other State and Federal programs that were in effect during the time of

26  plaintiff's employment, including but not limited to the Children's Health Insurance Program

27  Reauthorization act, the Substance Abuse and Mental Health Services Administration, the Tribal

28

Personal Responsibility Education Program and others."  (*Id.* at 5:12-16.)  Both contentions are

wrong.

### 1. Neither The Receipt Of Federal Funding, Nor The Promise To Comply With Law, Waives Sovereign Immunity.

Importantly, it is well settled law that a Tribal government's acceptance of funding does

not effect a waiver of its sovereign immunity.  *Evans v. McKay*, 869 F.2d 1341, 1346-47 (9th Cir.

1989) (holding tribe immune to claims based on federally funded tribal law enforcement

activities); *J.L. Ward Assocs., Inc.*, 842 F. Supp. 2d at 1177 (tribal health program that received

federal funds possessed immunity); *cf.  Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185,

1189 (9th Cir. 1998) (tribal health clinic accepting federal funds was an arm of the tribe not

subject to Title VII).

Nor does an agreement to follow certain laws, or to refrain from discrimination, as a

condition of receiving that funding amount to a waiver.  *See Sanderlin v. Seminole Tribe*, 243 F.3d

1282, 1288-89 (11th Cir. 2001) (holding that "contracts for federal financial assistance in which

[tribal chief] promised that the Tribe would not discriminate in violation of federal civil rights

laws . . . . in no way constitute an express and unequivocal waiver of sovereign immunity" to the

plaintiff's discrimination claims); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 584

(8th Cir. 1998) (holding tribal housing authority's agreement with Department of Housing and

Urban Development abide by various civil rights statutes did not waive immunity to

discrimination claims); *Nanomantube v. Kickapoo Tribe*, 631 F.3d 1150, 1153 (10th Cir. 2011)

("We thus hold that the Tribe's agreement to comply with Title VII, like similar agreements to

comply with other federal statutes, may 'convey a promise not to discriminate', but it 'in no way

constitutes an express and unequivocal waiver of sovereign immunity and consent to be sued in

federal court.'"); *Allen,* 464 F.3d at 1047-48 (holding the Tribe, which operated the casino, did not

clearly waive its immunity by stating in an employee handbook that employees could be

terminated "for any reason consistent with applicable state or federal law," or when it stated in an

Employee Orientation Booklet that it would "practice equal opportunity employment and

- 16 -

1   promotion regardless of race, religion, color, creed, national origin . . . and other categories

2   protected by applicable federal laws"); *Demontiney v. United States*, 255 F.3d 801, 814 (9th Cir.

3   2001) ("[Plaintiff] provides no support for the proposition that the Tribe's incorporation of [the

4   Indian Civil Rights Act] into its constitution and bylaws shows an intent to waive sovereign

5   immunity in federal court.").

6

7            **2.   The USDA Loan Transaction Did Not Waive The Tribe's Immunity
                     To Plaintiff's Suit.**

8            Contrary to Plaintiff's theory (SAC at 5:2-11), the Tribe's limited waiver of sovereign

9   immunity in connection with a federal loan transaction did not waive the Tribe's immunity to

10   employment suits.  In 2010, the Tribal Council approved a series of resolutions allowing it to take

11   advantage of a $13.6 million loan from the USDA.  (Vargas Decl., ¶ 7.)  This money was used to

12   construct the Tribe's new health clinic building on its trust land (specifically, the "Shingle Springs

13   Health and Wellness Center Building," hereinafter Clinic) and the Clinic's construction ended in

14   2013.  (*Id.*)  The Tribe has submitted each of the operative documents associated with that

15   transaction with this motion, and none authorizes Plaintiff to sue.  (*Id.*, ¶¶ 7(a)-7(g), Exs. D-J.)

16            In connection with that transaction, the Tribe expressly agreed to a limited waiver of its

17   sovereign immunity applying only to disputes by the parties in connection with the loan

18   transaction.  (Vargas Decl., ¶¶ 7(e)-7(f) , Exs. H-I.)  The Tribe also sent the USDA a letter

19   acknowledging it would "comply with applicable Federal statutes and regulations."  (*Id.*, ¶ 7(c),

20   Ex. F.)

21            None of the transaction documents purport to assign any rights to third parties, let alone

22   express a "clear" and "unequivocal" waiver of the Tribe's immunity to suits by third parties, such

23   as health program employees.  (Vargas Decl., ¶¶ 7(a)-7(g), Exs. D-J.)  *See C&L Enters.*, 532 U.S.

24   411, 418 (2001); *Pan Am. Co.*, 884 F.2d at 419.  Nor, as a matter of law, can the Tribe's

25   acknowledgement that it would comply with certain laws waive the Tribe's immunity.  *Sanderlin*,

26   243 F.3d at 1288-89; *Dillon*, 144 F.3d at 584; *Nanomantube*, 631 F.3d at 1153.  Therefore, the

27

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

- 17 -

government-to-government transaction between the USDA and the Tribe did not relinquish its the Tribe's immunity to Plaintiff's employment suit.

### 3.  The Tribe, Which Carefully Guards Its Immunity, Has Never Waived Its Sovereign Immunity To Suits By Tribal Employees, Including Health Program Employees.

Although Plaintiff has the burden of "proving by a preponderance" of evidence the existence of an immunity waiver (*Chayoon*, 355 F.3d at 143), she expressed "belief" that "waivers were required by other State and Federal programs that were in effect during the time of plaintiff's employment, including but not limited to the Children's Health Insurance Program Reauthorization act, the Substance Abuse and Mental Health Services Administration, the Tribal Personal Responsibility Education Program and others."  (SAC at 5:12-16.)  No such waivers exist.

In fact, the Tribe carefully guards its immunity to the courts of other sovereigns, waiving it only to the extent absolutely necessary.   (Vargas Decl., at ¶ 28.)   The Tribe does not waive its immunity unless a contracting party requires a waiver as a condition for a contract or funding agreement, and only when the Tribe concludes that the contract is worth relinquishing its sovereign authority to the jurisdiction of other courts.  (*Id.*)   Even then, the Tribe's practice is to limit its waivers to claims involving that specific agreement itself, *i.e.*, claims by the contracting party.  (*Id.*)   The Tribe has never consented to waive its immunity to any claim or suit by its health program employees, and there is no Tribal Council resolution (let alone any other document) reflecting that consent.  (*Id.*)  Indeed, although the burden is Plaintiff's to demonstrate the existence of a waiver encompassing her claims, to eliminate any doubt on this score, the Tribe submits with this motion all nonvendor agreements currently in effect regarding its health program.  (*Id.*, ¶¶ 5-18, Exs. D-BB.)  None come close to a waiver authorizing Plaintiff's suit.

None of the grants Ms. Bodi specifically mentions—"Children's Health Insurance Program Reauthorization act, the Substance Abuse and Mental Health Services Administration, the Tribal Personal Responsibility Education Program"—waive the Tribe's immunity to suits under the

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 18 -

1    agreement, let alone grant any rights to third parties, such as the right of health employees to sue

2    the Tribe.  (Vargas Decl., ¶¶ 10, 13, 16, Exs. M, S, X-Z.)

3         Of the other operative agreements or grant documents governing the Tribe's health

4    program, only two even arguably contain sovereign immunity waivers at all, and none benefit Ms.

5    Bodi.  On April 22, 2010, the Tribal Council approved a limited waiver in connection with a

6    Telemedicine Services Agreement with U.C. Davis Health Systems ("UCDHS").  (Vargas Decl.,

7    ¶ 11, Exs. N-O.)  The waiver was "solely for the . . . purposes" of permitting "a Claim by

8    UCDHS" for enforcement of obligations under the agreement, or for enforcing and collecting an

9    arbitration award under the agreement.  (*Id.*, ¶ 11, Ex. O at 1.)

10        A Grant Agreement from Blue Shield of California Foundation regarding award of a

11   "Rural Safety Net Integration 2012 Grant" purports to submit the parties "to the exclusive

12   jurisdiction of the state courts of California and to the jurisdiction of the United States District

13   Court for the District of Northern California" "[f]or the purpose of any action or proceeding

14   arising out of or relating to this Agreement."  (Vargas Decl., ¶ 18, Ex. BB at 4 (§ 20).)  Nowhere

15   does the Grant Agreement purport to grant any rights to third parties, much less consent to suits by

16   strangers to the agreement, such as health program employees.  (*Id.*, ¶ 18, Ex. BB.)

17        Plaintiff also theorizes the Tribe may have waived its immunity in connection with

18   obtaining licensure from the State of California for its health program.  (SAC at 4:26-5:2.)

19   Because the Tribe's clinic is located on land held in trust by the United States (Vargas Decl.,

20   ¶ 20), California regulation of the clinic is prohibited and state licensure is not required.

21   *McClanahan v. Ariz. Tax Comm'n*, 411 U.S. 164, 168 (1973) ("[T]he policy of leaving Indians

22   free from state jurisdiction and control is deeply rooted in the Nation's history." (citation and

23   quotation omitted); *Santa Rosa Band of Mission Indians v. Kings County,* 532 F.2d 655, 658-59

24   (9th Cir. 1975) ("[A]ny concurrent jurisdiction the states might inherently have possessed to

25   regulate Indian use of reservation lands has long ago been preempted by extensive Federal policy

26   and legislation.").  Consequently, the Tribe need not, and does not, hold any licenses from the

27   State of California in connection with operating its health clinic.  (Vargas Decl., ¶ 29.)

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 19 -

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    In sum, because the Tribe has never waived its immunity to suits by its health program

2 employees, the Tribe's immunity jurisdictionally bars Plaintiff's claims.

3

4    **E.    Plaintiff May Not Circumvent The Tribe's Immunity By Naming A Tribal Official To Obtain Injunctive Relief Binding The Tribe's Government.**

5    Plaintiff cannot salvage her claims by seeking injunctive relief controlling the manner in

6 which the Tribe structures and staffs its health programs by substituting a tribal official for the

7 Tribe itself.  First, the Tribe's immunity bars Plaintiff's injunctive relief claim against the official

8 because it requires affirmative action by the Tribe and impinges on the Tribal treasury.  Second,

9 Plaintiff lacks a federal law basis for injunctive relief because the federal statute upon which she

10 relies does not apply to this internal tribal dispute.[5]

11

12    **1.  Immunity Bars An Order Requiring The Tribe To Hire Plaintiff, As It Would Require Affirmative Action Of The Sovereign Tribe.**

13    The Ninth Circuit has repeatedly emphasized that relief under *Ex Parte Young*, 209 US 123

14 (1908), is not available where "the relief requested can not be granted by merely ordering the

15 cessation of the conduct complained of but will require affirmative action by the sovereign . . . ."

16 *Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992); *Dawavendewa v. Salt River*

17 *Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1159-60 (9th Cir. 2001) (refusing to

18 permit employee of tribally regulated employer to amend racial discrimination complaint to name

19 Navajo Nation officials because plaintiff's "real claim is against the Nation itself" and relief

20 "would operate against the Nation").

21    An illustrative California district court decision recently applied this principle to refuse a

22 suit for injunctive relief against tribal officials.  *Allen v. Smith*, No. 12-cv-1668-WQH-KSC, 2013

23 U.S. Dist. LEXIS 35046, at **34-36 (S.D. Cal. Mar. 11, 2013).  In *Allen*, Plaintiffs sued officials

24 of the Pala Band of Mission Indians, alleging the tribal government's decision to disenroll them as

25 members, and refusal to reinstate them, violated of federal law.  *Id.* at **23-24.  The court

26 _____

27 [5]    Plaintiff seems to acknowledge that an *Ex Parte Young* theory cannot save her claims under state law.  (First Opposition (Doc. 9), at 13:1-2 (predicating *Ex Parte Young* relief on asserted FMLA claim only)).

28

- 20 -

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   concluded that " "the relief sought in this Complaint would 'require affirmative action by the

2   sovereign,' *i.e.* the Pala Tribe's re-enrollment of Plaintiffs" and "[s]uch a remedy would operate

3   against the Pala Tribe, impermissibly infringing upon its sovereign immunity."  *Id.* at **34-35

4   (citations omitted)).

5        Here, Plaintiff asks this Court to require significant "affirmative action by the sovereign"

6   Tribe, namely:

7
              that the Court order and direct BRENDA ADAMS (or whomever is the
8             Chairperson of the TRIBAL HEALTH BOARD at the time of this
              Order) for a full reinstatement of plaintiff Beth Bodi to her position as
9             the Executive Director of the Shingle Springs TRIBAL HEALTH
              PROGRAM, with the same job responsibilities, rights, salary and
10            benefits as she enjoyed prior to her August 1, 2012 termination; . . . .

11  (SAC at 23:18-23.)  In effect, Plaintiff asks this Court to direct a sovereign tribe to restructure its

12  governance of a crucial government program by hiring Plaintiff to lead it as its executive-level

13  officer.  (Vargas Decl., ¶ 31.)

14       Plaintiff's demand that the Court restore "the same job responsibilities" she enjoyed prior

15  to her termination demonstrates the degree of action required of the Tribe.  (SAC at 23:20-22.)

16  Plaintiff essentially asks the Court to require the Tribe to grant to Plaintiff the "authority to

17  manage and supervise the day-to-day functions" of its health program and "responsibil[ity] for

18  hiring and termination of all other employees" of the health program, which she possessed prior to

19  termination.  (Vargas Decl., ¶¶ 4, 30, Ex. B at 2 (Art. II, §§ 1(J)-1(K).)  If restored to her position

20  as Executive Director, Plaintiff would again be tasked with working closely with the Health Board

21  and the Tribal Council on issues of health program budgeting and policy.  (*Id.*, ¶¶ 4, 30, Ex. B at 2

22  (Art. II, §§ 1(O)-1(P)), Ex GG at 1.)

23       Indeed, the "affirmative action" Plaintiff's injunctive relief imposes would also work an

24  economic hardship for the Tribe.  (Vargas Decl., ¶ 31.)  *See Allen*, 464 F.3d at 1047 (holding

25  protection of a tribe's sovereign treasury "is one of the historic purposes of sovereign immunity").

26  Although the Tribe initially filled Plaintiff's Executive Director position after her termination, the

27  Tribe terminated Ms. Bodi's replacement on July 11, 2013, due to economic factors involving the

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

MPA SUPPORTING MOTION TO DISMISS
                                                          SECOND AMENDED COMPLAINT

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   financially struggling health clinic.  (Vargas Decl., ¶ 31.)  At this time, the Tribe has no intentions

2   of filling the Executive Director position.  (*Id.*)  Rather, in a effort to eliminate a layer of health

3   program bureaucracy, cut program costs, and address the program's budget deficit, the duties of

4   the Executive Director position have been transferred to the Clinic Operations Manager, who

5   formerly reported to the Executive Director.  (*Id.*)  Now, as part of this streamlining and

6   downsizing process, the Tribe has more efficiently restructured its health program so that the

7   Clinic Operations Manager reports directly to the Tribal Administrator, eliminating the need for an

8   Executive Director and the costs associated with employing one.  (*Id.*)

9           Thus, Ms. Bodi's requested relief would result in a court order requiring the Tribe to

10  recreate the eliminated Executive Director position, pay an additional executive-level salary, and

11  staff the position with a person the Tribe deemed unfit for the job.  (Vargas Decl., ¶ 31.)  Being

12  forced to undergo such a restructuring on pain of contempt sanctions from this Court would

13  consume the Tribe's financial resources dedicated to the clinic, potentially adversely affecting

14  patient care, including care the clinic provides the Tribe's members.  (*Id.*)

15          Moreover, since Plaintiff's departure, the health program has implemented new processes,

16  has updated certain technology, and replaced certain medical and administrative staff.  (Vargas

17  Decl., ¶ 32.)  Additionally, the Tribe is actively in the process of recruiting and hiring needed

18  staff, including a Medical Director and Dental Director for its health program.  (*Id.*)  These

19  important clinic objectives would necessarily be delayed or frustrated if the Tribe had to use its

20  limited resources to reinstitute and integrate an Executive Director position that it has determined

21  is no longer even needed.  (*Id.*)

22          In sum, Plaintiff asks this Court to force the Tribe to hand over control of its health

23  program, and administrative control of the health care of its tribal citizens, to Plaintiff, effectively

24  vetoing the tribal government's decision that Plaintiff's leadership was not in the best interests of

25  the Tribe, and the Tribe's subsequent decision that the Executive Director position could be

26  eliminated altogether for the cost-effective betterment of its health care clinic.

27

28

- 22 -

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

2.   **The Tribe's Exclusive Rights Of Self-Governance Preclude Injunctive Relief In An Intramural Employment Dispute.**

Plaintiff's claim for *Ex Parte Young* relief against the Tribe's official also fails for lack of a federal law basis for injunctive relief.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-06 (1984) (because injunctive relief under *Ex Parte Young* rests on "the supreme authority of federal law," such relief is unavailable on state law claims).  Here, Plaintiff cannot bring her claims under the FMLA because applying the FMLA to the Tribe here, by granting Plaintiff's requested injunctive relief, would infringe on the Tribe's ability to govern itself in a purely intramural matter.

In *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985), the Ninth Circuit held that a federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if the law touches "exclusive rights of self-governance in purely intramural matters."  In *EEOC v. Karuk Tribe Housing Authority*, 260 F.3d 1071 (9th Cir. 2001), a case involving facts analogous to those presented here, the court considered whether the Age Discrimination in Employment Act (ADEA) applied to a tribal housing authority's relationship with an enrolled member of the tribe under its employ.  Employing the *Donovan* analysis, the court held that the ADEA did not apply:

> Notably, the employer in this case is the tribal government, acting in its role as provider of a governmental service: ensuring adequate housing for its members. . . . The Housing Authority thus functions as an arm of the tribal government and in a governmental role.  It is not simply a business entity that happens to be run by a tribe or its members, but, rather, occupies a role quintessentially related to self-governance. . . . Further, the dispute here is entirely "intramural," between the tribal government and a member of the Tribe.

*Id*. at 1080-81; *see also EEOC v. Fond du Lac Heavy Equipment & Construction Co., Inc.*, 986 F.2d 246, 249 (8th Cir. 1993) (noting that the plaintiff was a tribal member applying for a position with a tribal business located on the reservation, and explaining that "[s]ubjecting such an employment relationship between the tribal member and his tribe to federal control and supervision dilutes the sovereignty of the Tribe."); *EEOC v. Cherokee Nation*, 871 F.2d 937 (10th

- 23 -

1   Cir. 1989) (applying the Indian law canons requiring that ambiguous provisions be construed

2   liberally in favor of tribes to hold that the ADEA—which is also silent as to its applicability to

3   Indian tribes—does not apply to an Indian tribe in suits by tribal member employees.)

4            The court further explained that the term "tribal self-government" necessarily encompasses

5   a tribe's ability to make employment decisions without interference from other sovereigns.  *Karuk*

6   *Tribe Housing Auth.*, 260 F.3d at 1081; *see also Pink*, 157 F.3d at 1188 (holding Indian has no

7   cause of action under Title VII against a tribal non-profit entity that "served as an arm of the

8   sovereign tribes, acting as more than a mere business"); *cf. Middletown Rancheria of Pomo*

9   *Indians v. W.C.A.B.*, 60 Cal. App. 4th 1340, 1347-48 (1998) ("Here, Tribe's sovereign status is an

10  independent barrier for holding California's workers' compensation laws inapplicable [to tribal

11  casino employees] because their enforcement by the Appeals Board unlawfully infringes on the

12  right of Tribe to govern its own employment affairs." (citing *White Mountain Apache Tribe v.*

13  *Bracker*, 448 U.S. 136, 142-43 (1980))).

14           Like the housing authority in *Karuk Tribe Housing Authority*, the Tribe's health clinic

15  functions as an arm of the tribal government, located on the Tribe's federal trust land, providing

16  essential governmental services (specifically, healthcare and related services) to Tribal members,

17  their families, and others living near the Tribe's Rancheria.  (Vargas Decl., ¶¶ 20, 22.)  *See* 260

18  F.3d at 1080.  Indeed, as the Ninth Circuit has held, a tribal health program controlled by tribal

19  government officials and accepting federal funding is "more than a mere business" as a matter of

20  law.  *Pink*, 157 F.3d at 1188; *J.L. Ward Assocs., Inc.*, 842 F. Supp. 2d at 1176-77.  To be sure, the

21  health program is far from being a for-profit venture for the Tribe.  Even with extensive grant

22  funding, the clinic has not been profitable for at least five years and has only managed to survive

23  on funding from other governmental resources of the Tribe.  (Vargas Decl., ¶ 25.)

24           Finally, the intramural nature of this dispute is further underscored by the fact that this

25  dispute is "entirely 'intramural,'" as it is "between the tribal government and member of the

26  Tribe," and "does not concern . . . non-Indians as employers, employees, customers, or anything

27  else."  *Karuk Tribe Housing Auth.*, 260 F.3d at 1081.  Although certain customers of the clinic are

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

- 24 -

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1   non-Indian, none are involved in this dispute, as Ms. Bodi and all members of the Tribal Health

2   Board, including Ms. Adams, and even the other nonparties Plaintiff suggests contributed to her

3   injuries (Chairman Nicholas Fonseca, Rhondella Dickerson, and James Adams) are all members

4   of the Tribe.  (Vargas Decl., ¶ 33.)  *Compare Karuk Tribe Housing Auth.*, 260 F.3d at 1081

5   (employment discrimination dispute between a tribal government and a tribal member is "entirely

6   intramural" (internal quotations omitted)) *with Chapa-De*, 316 F.3d at 1000 (applying National

7   Labor Relations Act to dispute that "d[id] not concern a relationship between the Rumsey tribe

8   and its members" because it involved a union's attempt to seek representation of a workforce such

9   that at least half of the employees "involved in the controversy" were non-Indian).

10      And the relief Plaintiff seeks here is even more invasive than simply "[s]ubjecting . . . an

11  employment relationship between the tribal member and his tribe to federal control."  *Fond du Lac*

12  *Heavy Equipment*, 986 F.2d at 249.  Rather, as discussed above, it would require the Tribe to

13  restructure a key government program at undue expense, by recreating an executive-level position

14  and staffing it with a particular individual the Tribe decided, in the exercise of its sovereign

15  discretion and authority, was an ineffective leader.  (Vargas Decl., ¶¶ 31-32.)

16      For these reasons, FMLA does not support injunctive relief in this internal dispute between

17  a tribal member and her tribal employer.

18  **V.      CONCLUSION**

19      No matter how Plaintiff casts her claims, at their heart, they seek monetary relief from the

20  Tribe's sovereign treasury and injunctive relief compelling action by a sovereign tribal

21  government to the economic detriment of its financially struggling health clinic.  Accordingly, the

22  Tribe's sovereign immunity deprives this Court of jurisdiction, compelling dismissal of the

23  Plaintiff's Second Amended Complaint with prejudice.

24

25

26

27

28

Case No.  2:13-CV-01044 LKK-CKD                    MPA SUPPORTING MOTION TO DISMISS
                                                   SECOND AMENDED COMPLAINT

Respectfully submitted,

Dated: August 5, 2013

DENTONS US LLP


By   /s/ Paula M. Yost
             PAULA M. YOST

Attorneys for Defendants
SHINGLE SPRINGS BAND OF MIWOK
INDIANS, SHINGLE SPRINGS TRIBAL
HEALTH PROGRAM, SHINGLE SPRINGS
TRIBAL HEALTH PROGRAM, and BRENDA
ADAMS

27412353

MPA SUPPORTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000