1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   BETH A. BODI,                      No.  CIV. S-13-1044 LKK/CKD

12            Plaintiff,

13       v.                             **ORDER**

14   SHINGLE SPRINGS BAND OF MIWOK
     INDIANS; and DOES 1 through
15   15, inclusive,

16            Defendants.

17

18       This matter concerns an employment law dispute between

19   plaintiff Beth A. Bodi and defendants Shingle Springs Band of

20   Miwok Indians ("Tribe"), Shingle Springs Tribal Health Program

21   ("Health Program"), Shingle Springs Tribal Health Board ("Health

22   Board"), and individual defendant Brenda Adams, a Tribe member.

23   The gravamen of plaintiff's Second Amended Complaint is that she

24   was wrongfully terminated due to her illness, in violation of

25   state and federal law, including the federal Family and Medical

26   Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). The action

27   was initially filed in state court; defendants removed, and now

28

                                    1

1  move to dismiss under Fed. R. Civ. P. 12(b)(1), asserting lack of

2  subject matter jurisdiction based on tribal sovereign immunity.

3  　　Having considered the matter, the court will grant

4  defendants' motion to dismiss in part and deny it in part, for

5  the reasons set forth below.

6  **I.   BACKGROUND**

7  　　**A. Factual Background**

8  　　Plaintiff's Second Amended Complaint ("SAC," ECF No. 17)

9  alleges as follows.

10  　　Defendant Tribe is a federally-registered and recognized

11  Indian tribe. (SAC ¶ 2.) Plaintiff is a Tribe member. (SAC ¶ 18.)

12  　　Defendant Health Program operates the Shingle Springs Tribal

13  Health Clinic. Defendant Health Board is responsible for

14  governing the Health Clinic; the Health Board's members, in turn,

15  are appointed by the Shingle Springs Rancheria Tribal Council,

16  the Tribe's governing body ("Tribal Council"). (SAC ¶ 6.)

17  　　From February 1997 through August 3, 2012, plaintiff was

18  employed primarily by the Health Program; for approximately the

19  last eleven of these years, she was its Executive Director, a

20  capacity in which she reported to the Health Board. (SAC ¶¶ 18,

21  20, 21.)

22  　　In June 2011, plaintiff was diagnosed with cancer. She

23  alleges that prior to starting chemotherapy, she met with both

24  the Health Board's chairperson and the Tribe's Human Resources

25  Director. At this meeting, plaintiff indicated that she wanted to

26  take unpaid, job-protected leave under the FMLA; she was told

27  that she need not rely on the FMLA because she was in no danger

28  of losing her job, and that she could take off as much time as

1  she wanted. Plaintiff's chemotherapy regime successfully

2  concluded six months later, in December 2011. (SAC ¶¶ 23-25, 28.)

3      In mid-2012, plaintiff was given a performance evaluation,

4  her first since 2000. The written evaluation was prepared by a

5  Health Board member, and signed by both another Health Board

6  member and the Tribe's Human Resources Director. Plaintiff was

7  advised that the evaluation covered the April 2011 - April 2012

8  period (*i.e.*, a period encompassing the time during which

9  plaintiff was diagnosed and treated for cancer). She was given an

10  overall rank of 2 (on a scale of 1 to 5, with 5 being the most

11  favorable); according to the evaluation, this level meant,

12  "Serious effort is needed to improve performance." (SAC ¶¶ 30-33,

13  37.)

14      On June 28, 2012, shortly after she received this

15  evaluation, plaintiff broke her ankle at work; the injury was

16  extensive enough to require corrective surgery. Plaintiff's

17  physicians placed her on temporary disability leave through July

18  24, 2012; her orthopedic surgeon later ordered her to remain off

19  work till August 6, 2012. She also applied for FMLA leave, which

20  she is informed and believes was in effect starting June 28,

21  2012. (SAC ¶¶ 40-42.)

22      By letter dated August 1, 2012, plaintiff was informed that

23  she was "hereby terminated from [her] employment with the Shingle

24  Springs Band of Miwok Indians, Shingle Springs Tribal Health

25  Program, effective immediately." The letter stated that she was

26  being terminated "for inadequate performance" because of alleged

27  deficiencies occurring "during the last several months." The

28  letter also noted that the termination had "nothing to do with

3

1  your request and use of Family Medical Leave. All actions

2  referenced above occurred prior to your request for Family

3  Medical Leave and the Board's decision to terminate you from

4  employment is strictly a business decision based on your

5  inadequate performance, especially in light of the Program's

6  financial crisis." (SAC ¶¶ 44-47.)

7      Plaintiff believes she was terminated due to her objection

8  to the termination of the Health Program's Medical Director (who

9  had complained about patient loads), her own complaints about

10 patient loads, her calling of attention to troubling accounting

11 irregularities at the Health Program, and her objection to the

12 Tribe moving its Office of Tribal Administration to the Health

13 Clinic. (SAC ¶¶ 53-56.)

14     Around January 28, 2013, plaintiff was hired as Executive

15 Assistant to the Tribal Council Chairman, a position that paid

16 much less than her previous position as the Health Program's

17 Executive Director. (SAC ¶ 57.) On March 19, 2013, plaintiff sent

18 defendants a communication complaining about her termination from

19 the Health Program and expressing her willingness to seek redress

20 in state court. Two days later, she was placed on administrative

21 leave, and approximately three weeks later, she was terminated.

22 (SAC ¶ 58.)

23           **B. Procedural Background**

24     On April 22, 2013, plaintiff commenced this action in the

25 Superior Court of California for the County of El Dorado. (Notice

26 of Removal, ECF No. 1.)

27     On May 28, 2013, defendants removed to this court, asserting

28 federal question jurisdiction under 28 U.S.C § 1331. (Id.)

4

1    On July 12, 2013, plaintiff filed the operative Second

2    Amended Complaint, which pleads claims under the FMLA and various

3    state laws.

4    On August 5, 2013, defendants filed the instant motion to

5    dismiss. The basis of defendants' motion is that the Tribe, as a

6    federally-recognized tribal entity, is immune from suit, and that

7    the other defendants are similarly immune due to their

8    relationships with the Tribe. In opposition, plaintiff argues

9    that Congress abrogated tribal sovereign immunity in enacting the

10   FMLA; alternatively, she argues that defendants have waived

11   immunity through their actions.

12   The matter came on for hearing on March 3, 2014. The

13   following day, the parties filed a joint stipulation

14   (i) requesting that the court stay this matter pending the

15   outcome of settlement discussions, and (ii) pledging to file a

16   status report with the court no later than May 1, 2014. (ECF No.

17   49.) The court entered the parties' requested order. (ECF

18   No. 50.) On May 1, 2014, the parties notified the court that they

19   were unable to reach a settlement, and requested that the court

20   enter its ruling on the dismissal motion. (ECF No. 51.)

21   **II.   STANDARD**

22   "A federal court is presumed to lack jurisdiction in a

23   particular case unless the contrary affirmatively appears." Stock

24   West, Inc. v. Confederated Tribes of the Colville Reservation,

25   873 F.2d 1221, 1225 (9th Cir. 1989).

26   "If the court determines at any time that it lacks subject-

27   matter jurisdiction, the court must dismiss the action." Fed. R.

28   Civ. P. 12(h)(3). "The burden of establishing subject matter

jurisdiction rests on the party asserting that the court has jurisdiction." <u>In re Wilshire Courtyard</u>, 729 F.3d 1279, 1284 (9th Cir. 2013) (citing <u>McNutt v. GM Acceptance Corp.</u>, 298 U.S. 178, 182–83 (1936)). A defendant may raise the defense of lack of subject-matter jurisdiction by motion pursuant to Fed. R. Civ. P. 12(b)(1).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Id.</u>

In considering a facial attack, the court "determine[s] whether the complaint alleges 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Terenkian v. Republic of Iraq</u>, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

"If the defendant instead makes a factual attack on subject matter jurisdiction, the defendant may introduce testimony, affidavits, or other evidence" and "[u]nder these circumstances, 'no presumptive truthfulness attaches to plaintiff's allegations.'" <u>Terenkian</u>, 694 F.3d at 1131 (quoting <u>Doe v. Holy See</u>, 557 F.3d 1066, 1073 (9th Cir. 2009)). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to

dismiss into a motion for summary judgment." <u>Safe Air for</u>
<u>Everyone</u>, 373 F.3d at 1039. However, in the absence of a full-
fledged evidentiary hearing, disputes as to the pertinent facts
are viewed in the light most favorable to the non-moving party.
<u>Dreier v. United States</u>, 106 F.3d 844, 847 (9th Cir. 1996).

An action should not be dismissed for lack of subject matter
jurisdiction without giving the plaintiff an opportunity to amend
unless it is clear that the jurisdictional deficiency cannot be
cured by amendment. <u>May Dep't Store v. Graphic Process Co.</u>, 637
F.2d 1211, 1216 (9th Cir. 1980).

Defendants herein advance a facial attack regarding the
absence of subject matter jurisdiction, contending that the
court's jurisdiction fails as a matter of law. They also attack
subject matter jurisdiction on factual grounds, and have
submitted extrinsic evidence in support of their motion.

**III. ANALYSIS**

**A. Request for Judicial Notice**

Defendants request that the court take judicial notice of 78
Fed. Reg. 26384-26389 (May 6, 2013), a notice entitled "Indian
Entities Recognized and Eligible To Receive Services From the
United States Bureau of Indian Affairs." According to a summary
therein, this notice "publishes the current list of 566 tribal
entities recognized and eligible for funding and
services . . . ." The list includes "Shingle Springs Band of
Miwok Indians, Shingle Springs Rancheria (Verona Tract),
California."

1   A fact may be judicially noticed if it is "not subject to

2   reasonable dispute," either because it is "generally known within

3   the territorial jurisdiction of the trial court" or it is

4   "capable of accurate and ready determination by resort to sources

5   whose accuracy cannot reasonably be questioned." Fed. R. Evid.

6   201(b).

7   As the Federal Register is a source "whose accuracy cannot

8   reasonably be questioned," the court will take judicial notice

9   that the Tribe is recognized as a tribal entity by the United

10  States government.

11            **B. Background law re: tribal sovereign immunity**

12  "Indian tribes have long been recognized as possessing the

13  common-law immunity from suit traditionally enjoyed by sovereign

14  powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).

15  "Absent congressional or tribal consent to suit, state and

16  federal courts have no jurisdiction over Indian tribes; only

17  consent gives the courts the jurisdictional authority to

18  adjudicate claims raised by or against tribal defendants." Pan

19  Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th

20  Cir. 1989). "As a matter of federal law, an Indian tribe is

21  subject to suit only where Congress has authorized the suit or

22  the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg.

23  Techs., Inc., 523 U.S. 751, 754 (1998).

24  The court would ordinarily turn to the question of whether,

25  in enacting the FMLA, Congress authorized suit against Indian

26  tribes, a topic as yet unaddressed by the Ninth Circuit. But this

27  case's unusual procedural posture instead raises the issue of

28  waiver.

8

**C. Did the Tribe waive sovereign immunity by removing this action to federal court?**

On January 9, 2014, the court issued an order directing the parties to brief the following issues:

> Does an Indian tribe's removal of an action to federal court constitute a waiver of sovereign immunity? How is the analysis affected by the fact that the plaintiff in the underlying action was a tribe member? (Order, ECF No. 40.)

The parties filed opening briefs on January 23, 2014 (ECF Nos. 44, 45), and replies on February 6, 2014 (ECF Nos. 46, 47).

As to the second question, both parties agree that "[c]ase law bearing on claims brought against a Tribe or tribal entity by a member of the Tribe have not touched on the issue of whether or not it makes a difference that the claimant is a Tribe member." (Plaintiff's Opening Supplemental Brief 4, ECF No. 45.) Based on its research, the court concludes that the waiver issue is unaffected by plaintiff's status as a Tribe member. Accordingly, the court will address only the first question: whether tribes waive their sovereign immunity through removal to federal court.

Defendants maintain that "appearing in a federal forum solely to advance a jurisdictional objection grounded in federal law – namely, to challenge the existence of any court's jurisdiction to adjudicate the dispute on the basis of tribal sovereign immunity, as the Tribe proceeded here – certainly does not express the Tribe's unequivocal consent to the federal court's adjudication of the dispute required for a waiver of that immunity." (Defendant's Opening Supplemental Brief 1, ECF No. 44.)

1    The Ninth Circuit has, as yet, not addressed the issue, but

2    it has been reached by at least three district courts in this

3    Circuit. They have reached different conclusions.

4    In *State Eng'r v. S. Fork Band of the Te-Moak Tribe of W.*

5    *Shoshone Indians*, 66 F. Supp. 2d 1163, 1173 (D. Nev. 1999) (Reed,

6    J.), a Nevada district court found that removal to federal court

7    constituted a "clear and unequivocal waiver" of tribal immunity.

8    Much of the Nevada court's reasoning rests on an analogy between

9    tribal sovereign immunity and state sovereign immunity, and the

10   order relies heavily on cases finding state waiver of sovereign

11   immunity based on removal. Two other points about the case merit

12   mention. First (as defendants herein are at pains to point out),

13   the tribe in *State Eng'r*, by filing an answer, took affirmative

14   litigation steps in federal court beyond removal; by contrast,

15   defendant Tribe herein has to date only removed the case.

16   Nevertheless, the Nevada court does not appear to have based its

17   decision on that factor, finding only that "the Respondent

18   Tribe's joinder in removal of this case to this Court . . .

19   constitute[d] a . . . waiver of its tribal immunity." *Id.* at

20   1173. The second point is that, in the Nevada court's view, if

21   the tribe did not waive immunity, "the proper remedy [was] not

22   the dismissal that the [t]ribe requests, but remand to state

23   court." *Id.* While the order cites several district court

24   decisions for this proposition, as well as *Ruhrgas AG v. Marathon*

25   *Oil Co.*, 526 U.S. 574, 577 (1999) (holding that district courts

26   may dismiss a removed case for lack of personal jurisdiction

27   without first ruling on the issue of subject matter

28   jurisdiction), these cases do not appear to speak directly to the

10

1  proposition advanced. Moreover, while 28 U.S.C. § 1447(c)

2  provides, "If at any time before final judgment it appears that

3  the district court lacks subject matter jurisdiction, the case

4  shall be remanded," the Ninth Circuit has held that where remand

5  would be futile, a district court may simply dismiss the case.

6  Bell v. City of Kellogg, 922 F.2d 1418, 1424-25 (9th Cir. 1991).

7  In other words, there does not appear to be supporting authority

8  for this dicta regarding remand.

9      In the next decision, Sonoma Falls Developers, LLC v. Dry

10 Creek Rancheria Band of Pomo Indians, No. C-01-4125 VRW, 2002 WL

11 34727095, 2002 U.S. Dist. LEXIS 28087 (N.D. Cal. Dec. 26, 2002)

12 (Walker, J.), the district court concluded that removal did not

13 constitute a waiver of tribal immunity. That court instead

14 determined that "at least in the context of finding waiver,

15 Indian tribes are more akin to foreign sovereigns than to

16 states," id., and on this basis, declined to find waiver.

17     The court in Ingrassia v. Chicken Ranch Bingo and Casino,

18 676 F. Supp. 2d 953, 961 (E.D. Cal. 2009) (Ishii, J.) relied

19 heavily on Sonoma Falls in also concluding that removal does not

20 trigger a waiver of tribal immunity. However, Judge Ishii was not

21 definitive in reaching this conclusion, noting:

22              At this point, the case law is not absolutely
                clear whether tribal sovereign immunity is
23              more like the immunity enjoyed by the states
                or by foreign sovereigns in the circumstance
24              of removal. There are a number of cases in
                which courts have applied tribal sovereign
25              immunity after removal without addressing the
                issue. [Citations.] In other cases where
26              tribes removed, courts have pierced immunity
                but not based on waiver from removal.
27              [Citation.] These cases, in conjunction with

28

1
2
3

> Sonoma Falls, [*supra*,] leads to the conclusion that removal to federal court does not waive tribal sovereign immunity. However, the issue is not settled and appeal may be fruitful . . . .

4  Unfortunately, no appeal was taken, and the issue remains

5  undecided by the Ninth Circuit.

6      The only on-point federal appellate decision appears to be

7  Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla., 692

8  F.3d 1200, 1206 (11th Cir. 2012), in which the panel noted that

9  "the precise issue before us – whether an Indian tribe's removal

10  of a suit to federal court waives the tribe's sovereign immunity

11  – is one of first impression among the circuits . . . ." The

12  Contour Spa panel held that tribes do not waive their immunity by

13  removing a case to federal court. Its principal reasons are as

14  follows:

15      • The panel distinguished Lapides v. Bd. of Regents of

16        the Univ. Sys. of Ga., 535 U.S. 613 (2002) (holding

17        that the State of Georgia waived Eleventh Amendment

18        immunity through removal)[1] on the grounds that "an

19        Indian tribe's sovereign immunity is not the same thing

20        as a state's Eleventh Amendment immunity" and that a

21        tribe's waiver of immunity "must be unequivocally

22        expressed." Contour Spa, 692 F.3d at 1206.

23      • Instead, the panel analogized tribal immunity to

24        foreign sovereign immunity. After quoting the Supreme

25

26  [1] The Ninth Circuit has adopted "a straightforward, easy-to-administer rule in accord with Lapides: Removal [by a State] waives Eleventh Amendment immunity." Embury v. King, 361 F.2d 562, 566 (9th Cir. 2004).

27
28

1        Court for the proposition that "[l]ike foreign

2        sovereign immunity, tribal immunity is a matter of

3        federal law," <u>Kiowa Tribe</u>, 523 U.S. at 759, the

4        Eleventh Circuit panel argued that "[m]uch like foreign

5        sovereigns, Indian tribes have an interest in a uniform

6        body of federal law in this area." <u>Contour Spa</u>, 692

7        F.3d at 1207.

8      • Ultimately, the panel was not inclined to force a tribe

9        to "either forego its immunity from suit by removing

10      the case or assert its immunity – itself a matter of

11      federal law – *only* in state court." <u>Id.</u>

12  Defendants rely heavily on <u>Contour Spa</u> in their briefing.

13     Having summarized the (unsettled) state of the law in this

14  area, let us turn to the arguments presented.

15                 **1. Alleged forum-shopping**

16     Plaintiff claims that, in removing the case to this judicial

17  district, defendants were engaged in forum-shopping. They point

18  to a recent $30.4 million verdict in a jury trial against the

19  Tribe in El Dorado Superior Court. <u>Sharp Image Gaming, Inc. v.</u>

20  <u>Shingle Springs Band of Miwok Indians</u>, No. PC20070154. In that

21  case, the Tribe (represented by the same counsel as herein) was

22  allegedly unsuccessful in its efforts to remove to federal court.

23  As the court informed plaintiff's counsel at hearing, it decides

24  motions based on the facts presented and the law, and not on the

25  basis of supposition. Accordingly, the court will disregard this

26  argument entirely.

27

28            **2. Comparisons to other forms of sovereign**
                     **immunity**

1    As discussed above, other courts considering whether removal

2  constitutes waiver of sovereign immunity rely heavily on

3  comparisons between tribal sovereign immunity and the sovereign

4  immunity enjoyed by states and by foreign nations. The court in

5  State Eng'r, 66 F. Supp. 2d at 1173, likened tribal sovereign

6  immunity to state sovereign immunity and found waiver on that

7  basis; the other three courts found analogies to foreign

8  sovereign immunity more apt, and accordingly, declined to find

9  waiver.

10    The problem with this approach, in the court's view, is that

11  tribal sovereign immunity is *sui generis*, making such comparisons

12  largely inapt. Tribal sovereign immunity is rooted in Chief

13  Justice Marshall's identification of tribes as "domestic

14  dependent nations." Cherokee Nation v. Georgia, 30 U.S. 1, 17

15  (1831). "The doctrine [of tribal sovereign immunity] was

16  originally enunciated by [the Supreme] Court and has been

17  reaffirmed in a number of cases." Okla. Tax Comm'n v. Citizen

18  Band of Potawatomi Indian Tribe of Okla., 498 U.S. 505, 510

19  (1991) (citing Turner v. United States, 248 U.S. 354, 358 (1919);

20  Santa Clara Pueblo, 436 U.S. at 58). The contours of tribal

21  sovereign immunity have largely been drawn by the Supreme Court,

22  abrogated from time to time by Congressional action.

23    By contrast, Congress provided foreign sovereigns with a

24  statutory right of removal through enacting the Foreign Sovereign

25  Immunities Act of 1976.[2] While the court in Contour Spa, 692 F.3d

26  _____

27  [2] See 28 U.S.C. 1441(d) ("Any civil action brought in a State
   court against a foreign state . . . may be removed by the foreign
   state to the district court of the United States for the district

28  and division embracing the place where such action is pending").

1    at 1200, acknowledged this fact, it failed to satisfactorily

2    explain why the absence of a statutory right of removal for

3    tribes is not fatal to the comparison between the two forms of

4    immunity, at least where waiver-through-removal is concerned.

5         State sovereign immunity is, of course, a creation of the

6    U.S. Constitution. See, e.g., Blatchford v. Native Village of

7    Noatak, 501 U.S. 775, 779 (1991) ("[W]e have understood the

8    Eleventh Amendment to stand not so much for what it says, but for

9    the presupposition of our constitutional structure which it

10   confirms: that the States entered the federal system with their

11   sovereignty intact; that the judicial authority in Article III is

12   limited by this sovereignty . . . and that a State will therefore

13   not be subject to suit in federal court unless it has consented

14   to suit, either expressly or in the 'plan of the convention.'").

15   It goes without saying that Native American tribes did not

16   voluntarily enter into the Union, which diminishes the utility of

17   comparisons to the states in this regard.

18        In light of the distinct foundations of tribal sovereign

19   immunity, the court will not rely on analogies to these other

20   forms of immunity in deciding this issue.

21            **3. The availability of the sovereign immunity
                      doctrine in multiple forums**

22

23        In its order directing the parties to brief waiver-by-

24   removal, the court noted that tribal sovereign immunity may

25   equally be invoked in state and federal courts, and cited

26   numerous California state cases in which tribes successfully

27   raised an immunity defense.

28

1     The existence of such cases would appear to put the lie to

2   defendants' assertions that removal to federal court is necessary

3   in order to ensure uniformity in the law regarding tribal

4   immunity. (Defendants' Opening Supplemental Brief 5.) In fact,

5   the very notion of a "uniform body of federal law in this area,"

6   Contour Spa, 692 F.3d at 1207, is one of those notions that

7   cannot withstand scrutiny. Because there is no dedicated removal

8   statute for Indian tribes (as there is for foreign states), the

9   defendants herein were only able to remove this action because

10   plaintiff pled a federal claim along with her state claims.

11   Defendants would otherwise have been left to raise immunity in

12   state court. Countless cases share this procedural posture. In

13   fact, at least one involved defendant Tribe: Shingle Springs Band

14   of Miwok Indians v. Workers' Comp. Appeals Bd., No. C032701, 2001

15   WL 1529124, (Cal. Ct. App. Sep. 26, 2001). There, a Health Clinic

16   employee filed a workers' compensation claim against the Tribe;

17   the Tribe, in turn, asserted sovereign immunity as a defense.

18   California's Third District Court of Appeals agreed that the

19   Tribe would ordinarily be immune from the administrative

20   proceedings, but remanded to the Workers' Compensation Appeals

21   Board to determine whether the Tribe had waived immunity. The

22   case illustrates the multiplicity of proceedings and forums in

23   which tribes may raise sovereign immunity. The situation is quite

24   different from that in, say, United States v. United States Fid.

25   & Guar. Co., 309 U.S. 506 (1940) (finding that tribe did not

26   waive its sovereign immunity against counterclaims by filing an

27   action in federal court). There, the Supreme Court recognized

28   that "[t]he sovereignty possessing immunity should not be

1   compelled to defend against cross-actions away from its own

2   territory or in courts, not of its own choice, merely because its

3   debtor was unavailable except outside the jurisdiction of the

4   sovereign's consent." Id. at 512. Here, by contrast, the

5   defendants could just as easily have asserted sovereign immunity

6   in state court. Accordingly, it is difficult to straightfacedly

7   claim that encouraging the development of a "uniform body of

8   federal law in this area" should be a dispositive factor, unless

9   the "area" in question is the narrow slice of cases that are

10  removable under 28 U.S.C. § 1441(a). The court sees no basis for

11  drawing such a fine distinction.

12      Defendants invoked the jurisdiction of the federal courts to

13  raise a jurisdictional defense that could equally have been

14  raised in the state court. As the court recognized in its January

15  9, 2014 Order, "there appears no principled reason for defendants

16  to have removed the action before asserting immunity." (ECF

17  No. 40.) Defendants have advanced none in their briefing or at

18  oral argument. The court therefore finds that the Tribe has

19  unequivocally waived any claim of sovereign immunity through

20  removal. And, as defendants Health Program, Health Board, and

21  Brenda Adams's assertions of sovereign immunity derive from the

22  Tribe's sovereign immunity, subject matter jurisdiction over

23  plaintiff's claims against these defendants is also proper.

24      The court nevertheless shares Judge Ishii's hope that the

25  defendants appeal this ruling so that a higher court may

26  definitively resolve the issue.

27

28

1

**D. Is plaintiff's claim for injunctive relief against the Chairperson of the Health Board cognizable?**

2

3    Plaintiff's third claim, for violations of the FMLA and the

4  California Family Rights Act, Cal. Gov't Code §§ 12945.1 and

5  12945.2, seeks, *inter alia*:

6

> injunctive equitable relief against the
> current Health Board chairperson Brenda

7
> Adams, sued in her official capacity (or
> whomever is the chairperson of the [] Health

8
> Board at the time of entry of this Order) for

9
> reinstatement in her position as the
> Executive Director of the Shingle Springs

10
> Tribal Health Clinic. Plaintiff seeks the
> same job duties, rights, responsibilities,

11
> salary and benefits as she enjoyed prior to

12
> her August 2012 termination. (SAC ¶ 90.)

13  The claim is brought against all defendants.

14    Defendants, in turn, move to dismiss the claim on the

15  grounds that granting the requested relief would infringe on the

16  Tribe's ability to govern itself in a purely intramural matter.

17  This line of argument is inapt. "As a matter of federal law, an

18  Indian tribe is subject to suit only where Congress has

19  authorized the suit or the tribe has waived its immunity." Kiowa

20  Tribe, 523 U.S. at 754. The objection that defendants advance is

21  rooted in the first prong of this test. "[G]eneral Acts of

22  Congress apply to Indians . . . in the absence of a clear

23  expression to the contrary." Fed. Power Comm'n v. Tuscarora

24  Indian Nation, 362 U.S. 99, 120 (1960). The Ninth Circuit has

25  "explicitly adhered to the Tuscarora rule . . . although [it]

26  recognize[s] exceptions to it." N.L.R.B. v. Chapa De Indian

27  Health Program, Inc., 316 F.3d 995, 998 (9th Cir. 2003). In

28  particular:

> A federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations . . . ." In any of these three situations, Congress must expressly apply a statute to Indians before we will hold that it reaches them.

Donovan v. Coeur d'Alene Tribal Farm, 751 F.2d 1113, 1116 (9th Cir. 1985) (quoting U.S. v. Farris, 624 F.2d 890, 893 (9th Cir. 1980), cert. denied, 449 U.S. 1111 (1981)).

The cases that defendants cite – EEOC v. Cherokee Nation, 871 F.2d 937, 938 (10th Cir. 1989) (finding that the Age Discrimination in Employment Act did not apply to defendant tribe in part due to "reluctan[ce] to find congressional abrogation of treaty rights"); EEOC v. Fond du Lac Heavy Equip. & Constr. Co., 986 F.2d 246, 249 (8th Cir. 1993) (refusing to apply Age Discrimination in Employment Act to dispute between tribe member and tribal employer, as doing so would "interfere[] with an intramural matter that has traditionally been left to the tribe's self-government."); Pink v. Modoc Indian Health Project, 157 F.3d 1185 (9th Cir. 1998) (holding that nonprofit formed by two tribes fell within scope of Title VII's exemption of "tribe" from liability); Middletown Rancheria of Pomo Indians v. Workers' Comp. Appeals Bd., 60 Cal. App. 4th 1340 (1998) (finding that 28 U.S.C. § 1360 did not provide state administrative agency authority over dispute between tribe member and tribal employer);

and <u>EEOC v. Karuk Tribe Hous. Auth.</u>, 260 F.3d 1071, 1080 (9th Cir. 2001) (determining that the ADEA did not apply to employment relationship between tribe member and tribal employer, which involved "'purely internal matters' related to the tribe's self-governance.") – all involve determinations of whether, and the extent to which, Congress authorized suit against Indian tribes. As such, they are irrelevant to the present inquiry. Given that the court has found that the Tribe waived its sovereign immunity through removal, it need not assess the extent to which Congress may have abrogated tribal immunity in enacting the FMLA.

Defendants also move to dismiss this claim on the grounds that tribal officials cannot be sued for injunctive relief in an attempt to circumvent a tribe's sovereign immunity, citing cases such as <u>Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.</u>, 276 F.3d 1150 (9th Cir. 2001) ("[Plaintiff]'s argument strikes us as an attempted end run around tribal sovereign immunity.") in support. Again, defendants' argument fails because the court has found that the Tribe waived its immunity through removal.

**E. Is plaintiff's claim for injunctive relief against the Chairperson of the Health Board cognizable?**

Defendants move to dismiss defendant Health Program from the action, arguing that it has no legal existence separate from that of the Tribe and the Health Board. In support, defendants submit the declaration of one Ernest Vargas, Jr., the Tribe's Tribal Administrator and former Finance Director. (Decl. Vargas ¶ 1, ECF No. 20.) Vargas avers as follows:

- "Since approximately 1995, the Tribe has operated a full-service health clinic. [. . .] The Tribe's health clinic, or program, is wholly owned by the Tribe, and has no corporate existence separate from the Tribe, under federal, state, or tribal law." (Id. ¶ 20.)

- "As Executive Director of the health program. Ms. Bodi was directly employed by the Tribe itself, and her earnings statements reflected that she was employed by the 'Shingle Springs Rancheria,' another name the Tribe has used to identify itself. Attached hereto as Exhibit EE are true and correct copies of Ms. Bodi's earnings statements dated June 15, 2012, June 29, 2012, and July 13, 2012." (Id. ¶ 21.)

- "The Tribe runs the health clinic (or health program) through its Shingle Springs Tribal Health Board, a governmental unit comprised of nine directors selected from the Tribe's membership and staffed and controlled by the Tribal Council, the Tribe's governing body. At its sole discretion, the Tribal Council appoints Health Board directors and may remove them, with or without cause. The Health Board elects a Chairperson to preside at all meetings of the Board." (Id. ¶ 23.)

- "'Shingle Springs Tribal Health Program' is registered with the State of California as a fictitious name by which the Tribe does business. Attached hereto as Exhibit FF is a true and correct copy of the Tribe's Fictitious Business Name Statement for 'Shingle Springs Tribal Health Program' . . .

1       filed with the Office of the El Dorado County Clerk on July

2       24, 2012." (Id. ¶ 24.)

3  Plaintiff has failed to adduce any evidence to the contrary. It

4  therefore appears that defendant Health Program must be dismissed

5  from this action for lack of any legal existence independent of

6  the Tribe and the Health Board.

7    **IV.   CONCLUSION**

8      In light of the foregoing, the court hereby orders as

9  follows:

10     [1] Defendants' motion to dismiss Shingle Springs Tribal

11     Health Program as a defendant is GRANTED.

12

13     [2] The remainder of defendants' motion to dismiss

14     plaintiff's Second Amended Complaint is DENIED.

15     IT IS SO ORDERED.

16     DATED:  May 13, 2014.

17

18

19

20     LAWRENCE K. KARLTON

21     SENIOR JUDGE
      UNITED STATES DISTRICT COURT

22

23

24

25

26

27

28